WILLIAM J. VASON, plaintiff in error, *vs.* THE SOUTH CAROLINA RAILROAD COMPANY *et al.,* defendants in error.

1. The use of steam engines to draw trains of cars over the street railroad, laid down by the Augusta and Summerville Railroad Company, through Washington street, in the City of Augusta, is expressly authorized by Acts of the Legislature of this State, and by the contracts and ordinances of the City of Augusta, and being so authorized, the running of said trains cannot be abated as a public nuisance, under the Revised Code of this State, even though such use "tend to the immediate annoyance of the citizens in general.

2. Whether the Court of Equity will now restrain the unreasonable exer-

cise of said privilege, so as to interfere with the ordinary use of the street by the citizens, as not within the scope of the privilege granted by the Legislature, and whether property holders upon the street, who are damaged by the use of the same, even within the scope of the legislative grant, may recover are questions which cannot be made in a proceeding to *abate* the use complained of as a *nuisance,* and upon these questions this Court expresses no opinion.

Railroads.    Municipal Corporations.    Nuisance.    Before Judge GIBSON.    Richmond Superior Court.    June Term, 1870.

Vason made an affidavit that locomotive engines, drawing long trains of cars, then were and for a year before, had run on the railway located in Washington street, between Reynolds and Telfair streets, in the City of Augusta; that this was a nuisance "which tends to the immediate annoyance of" and works hurt, inconvenience and damage to "the citizens in general," whose business requires them to pass along or across said street, and who reside in or own houses near to and fronting on said street: 1st. By impeding and obstructing the free and common use of passage along and across said street, by the length and irregular movement of trains of cars. 2d. By shaking the houses, thereby breaking the plastering and filling the houses with dust and smoke. 3d. By disturbing the occupants by the noise of bells and steam, frightening animals drawing vehicles, etc. Said street is but sixty-five feet wide, and is one of the most ancient and populous streets in Augusta, and this running of locomotives, etc., endangers the lives of citizens, and has killed some, and decreases the value of all the property on the street. These trains and locomotives belong to the South Carolina Railroad Company, the Charlotte, Columbia and Augusta Railroad Company, and the Georgia Railroad and Banking Company. And he prayed the Mayor and Council to abate the same, as a public nuisance. Many minor questions arose on the trial, which throw no light upon the opinion.

Vason proved the averments in his affidavit by "a cloud

of witnesses." The defense was, that by Acts of the General Assembly, the Mayor and Council of Augusta had a right to allow said street to be so used, and that it had contracted with said railroad companies, so as to permit such use. The acts, ordinances of the city, and contracts alluded to, were put in evidence.

Vason contended that the Charter of Augusta (1798,) gave the City Council no power to grant the right to lay said track in a street, that the Acts relied upon was unconstitutional, because they made no provision for compensation to those injured by such use; that they did not contemplate the using of *steam* upon the railroad, and if it were contemplated the manner of its use and its results made it a nuisance.

These two bars of iron constituting the railroad track, were in the middle of the street, without embankments or excavations, and passage across the street, etc., is only interrupted by the presence of the trains.

The City Council decided that this was not such a nuisance that they should require its abatement, and dismissed the petition at Vason's costs.

He carried the matter to the Superior Court, upon all the questions made below. The judgment below was affirmed, and that is assigned here as error.

W. J. VASON. JAMES S. HOOK, plaintiff in error. This nuisance is abateable by the Mayor and Council of Augusta: 40 Ga. R., 87; R. Code sec. 4478. It was a public nuisance: R. Code, sec. 2949; 9 Ga. R., 425. Corporations take no power except by express grant: 4 Wheat. R., 626. Act of 1856 did not authorize these contracts. Power to decrease value of easements: 1 Redf. on Railways, 303. The fee of streets is in adjacent land owners: 1 Redf. on Railways, 300, *et seq.*, 314; 2 Bouv. L. Dic., 551; 4 Serg. and R., 108; 4 Bacon's Abr., 408; 1 Bouv. L. D., 586; 1 N. H. R., 16; 1 Conn. R., 103; 1 Pick. R., 122; 1 McCord, R., 67; 2 Mass. R., 127; 3 Rawl's R., 495; 15 John's R., 483; 9 Serg. &

R., 33; Adams on Eject., 19–18. A right by law may be so used as to become a nuisance: Cooly's Con. Lim., 544, 547.

W. T. GOULD, F. H. MILLER, A. R. WRIGHT, W. HOPE HULL, for defendants. This is a public nuisance, if any, and is abateable by indictment only: 28 Ga. R., 418; 15th 61, 62; 40th 87; R. Code sec. 2946 4478; 2 Gray, 54, 339. Owners of land on street whereof the fee is in the State have no right to institute such actions as this: 8 Dana, 289, 301, 307; 1 Allen, 190; 32 Conn. 579; 33 Miss. R., 128; 3 Bar., 459; 10th 26; 27 N. Y. R., 188. The City Council may grant such use if it do not unreasonably abridge public use of the street: 7 Barb., 508; R. M. Ch. R., 342. If authorized by law, no nuisance: 14 Conn. R., 565; 17th, 372; 8 Gill & J., 479; 4 Cush. R., 63; Railroads have right to use steam if contracts permit them to connect railroads; 12 Ind. R., 552; 37 Bar., 357; Act 21st March, 1864, sec. 9; Act Feb. 20th, 1869; 13th Bar., 646; 8 Dana, 289; 33 Ga. R., 601; Act of 56th Oct., 1870.

McCAY, J.

1. That the use of steam engines to draw trains of cars through Washington street, in the city of Augusta, thus connecting the various railroads entering the city at different points, is authorized by the contracts and ordinances of the city is not disputed. Indeed, it is too plain for dispute. The only question there can be on this point is the authority of the city to do this. It seems to us that this too is very plain. The Act of February 15th, 1856, authorizes the City Council to permit the connection of all railroads in the city, by common tracks, depots, or otherwise, on *such terms and conditions* as may be fixed by the City Council. The Act incorporating the Columbia and Augusta Railroad Company, authorizes it to construct a road to be used with steam, animal or other power, crossing the Savannah river and connecting with the Georgia Railroad: *Provided,* the consent

of the city authorities of Augusta be first obtained. And the Act of October 26th, 1870, in express terms, ratifies and confirms these several contracts and ordinances, by which the City Council has at various times and by various contracts and ordinances, permitted and *sold* this right to use the street railroad in the manner complained of.

But even without this, assuming the *chartered* rights of these roads to *connect through the city*, much might be said in favor of the right of the *City Council*, under its *general power* over the streets and over nuisances in the city, etc., to allow the connection in this special manner, at least so far as to purge the act, when done, of any quality of a public nuisance, subject to abatement.

2. Without doubt, the use of steam locomotives, puffing, blowing, whistling, clattering and crushing through the streets of a city, or along a public highway in the country, comes within the definition of a public nuisance. It is an annoyance to the citizens in general. It is dangerous to human life, and requires constant care and watchfulness from all who are in the vicinity of it to keep free from damage from it. But there are two kinds of nuisances: public and private. " A public nuisance damages all persons who come within the sphere of its operations, though it may vary in its effects upon individuals. A private nuisance is one limited in its effects to one or a few individuals." Revised Code, 2946. For the latter, the persons injured have a right of action for damages. For the former, no such right exists, unless there be special damages to one in which the public do not participate. Revised Code, section 2947. The reason for this distinction is an obvious one. The public is the redresser of its own wrongs. What the public suffers from, the public may punish, or not punish, at its discretion. There may come more good than evil from it, and the public may see fit to permit it. But a private nuisance stands on a different footing. Each individual injured has his right of redress for the damages he has received. And even as to pub-

.lic nuisances which give special damages to individuals, in which the public do not participate, it is not fair for the public to put its burdens upon a few without compensation. Hence, for the special damage, the person injured has his redress. Revised Code, section 2947.

The proceeding now before the Court is not an action for the damages which any one has received from a nuisance. It is an effort to abate the use made of this railroad as a nuisance to the public. Were this an action for damages, we might discuss the meaning of that clause of section 2949 of the Revised Code, which declares that " the fact that the act done is otherwise lawful does not keep it from being a nuisance." But very clearly the reference there is to private nuisances, or to such public nuisances as individuals may receive special damage from, in which the public do not participate. Very much might be said in favor of the doctrine, that even the Legislature cannot, by a law, authorize an act so as to deprive the citizen of an action for the *special damage* he receives from it, unless he be otherwise compensated. But in the case before us, Mr. Vason appears in behalf of the public. Under the facts in the record, if this is a nuisance at all, it is a public nuisance. He has so attacked it. Whatever damages it causes are " damages to all persons who come within the sphere of its operations, though it may vary in its effects on individuals." Revised Code, section 2946.

By section 4478 of the Revised Code, "any person who shall erect, or continue, after notice to abate, any nuisance which tends to annoy the community, or injure the health of the citizens in general, or to corrupt the public morals, is indictable, and may be punished by fine and imprisonment." Now the nuisances subject to abatement as public nuisances, are described in almost the same language: " Any nuisance which tends to the *immediate* annoyance of the citizens in general, is *manifestly* injurious to the public health and safety, or tends *greatly* to corrupt the morals and manners of the people may be abated," etc. Such a nuisance as may be

abated as a public nuisance, it is an indictable offense to erect, or to continue after notice.

A crime is the violation of a public law: Revised Code, section 4227. Can that be a violation of a public law which a public law has specially authorized? Will the *public* abate, as a public nuisance, an erection which the public, by a statute, has expressly permitted to be erected? Whatever wrong there is in an act, which makes it a public nuisance, is a wrong to the public, and it is absurd to say that a thing is a public wrong which the public has, by special law, permitted to be done. And such is the uniform current of authorities, both in England and America: Rex vs. Pease, 4 Barn. & Adol., 19; 9 Barb., 350; 18 Barb., 222; 15 Barb., 193; 10 Barb., 26; 13 Barb., 646; 6 Barb., 313; Roscoe's Crim. Ev., 659; Bacon's Ab. Tit. Nuis, A.; 8 Gray, 197; 11 Richardson, 114. See, also, Hilliard on Torts, 1 volume, 550, 551; Sherman & Redfield on Negligence, 416. The only reply that can be made to this list of authorities is, that these cases refer to an *indictment* for a nuisance, and this is, in the main, true. But our proceeding to abate is only another mode of doing what it was one of the principal objects of an indictment, at common law, to do, to-wit: to abate the nuisance. It was a part of the judgment of the Court, on conviction of the offender, if the nuisance was continuous, to direct the sheriff to abate the nuisance: Wharton's Amer. Crim. Law, sec. 2369; 2 Ralls' Ab., 84, sec. 15; 2 Burns' Jus., 222; 1 Hawk's Bl. Cro., 365; Taggart vs. The Commonwealth, 9 Harris, 527.

Indeed, there was no other way by which a *public nuisance* could be abated, by process of law. There was an old writ, called an *assize* of nuisance, by which a private nuisance against a freehold might be abated, but as to public nuisances, an indictment was the only remedy, except by the act of a person taking the law in his own hands: 2 Bouv. Inst., 577, 579. Our statute, defining an *abatable* nuisance, defines an *indictable* nuisance, save that it adds "immediate,"

"manifestly" and "greatly," before the words, "annoyance," "public health" and "public morals," and was evidently intended not to authorize the abatement of an act which was not indictable, but to authorize the abatement of indictable nuisances of peculiar virulence, without waiting for an indictment: Section 4023, 4478, Revised Code. It is a public proceeding, in behalf of the public, and, according to section 2946 of the Code, it ought to be in the name of the State. It is true that sections 4023 and 4024 do not point out what particular form shall be used, nor would we insist that any particular form is necessary; but the whole scope and design of the law indicates that it is a proceeding in behalf of the public, to cure a public wrong.

We hold, therefore, that the use of steam on this railroad is specially permitted by the public authorities, and that it cannot, therefore, be abated as a nuisance. If, in this use, acts are done beyond the scope of the permission, as if the use be in a manner not contemplated by the public authorities, as deduced from the language used, we do not doubt but that equity will restrain it within the bounds prescribed. How far—this permission to so use the public street—this condonation by the public authorities of the nuisance—affects the right of any individual who has received damage by the use, we do not decide. The question is not before us, and it has difficulties we do not feel called upon to settle, until the question legitimately arises.

Judgment affirmed.