### HACKNEY *v.* COWETA COUNTY.

A county is liable for injuries caused by a defect in a county bridge constructed, either by contractors or by the county authorities, since the passage of the act of 1888, although the injuries occurred more than seven years after the bridge was constructed.

Argued November 18, 1902. — Reargued January 21, — Decided March 13, 1903.

Action for damages.　Before Judge Freeman.　City court of Newnan.　July 29, 1902.

The action was on account of injuries alleged to have been caused by a defect in a public bridge. A demurrer on the grounds that no cause of action was set out, and that the suit was barred by the statute of limitations, was sustained, and the plaintiff excepted.　The petition was filed December 31, 1901.　It alleged that on November 12, 1900, the plaintiff was in a road-cart, driving a horse attached to it across the bridge in question, when, by reason of the defective condition of the bridge (in that one of the planks in the flooring was inferior, insufficient, and decayed, and had a hole in it occasioned by wear and decay), one of the front legs of the horse fell through the hole or broke through the bridge, thus causing the horse to fall and the plaintiff to be thrown from the cart and to sustain bodily injuries described; that he was at that time exercising the utmost care, and could not have avoided the injuries; that the defendant caused the bridge to be erected in 1892 under contract let by the county commissioners in that year, and the commissioners took no bond from the contractor who built the bridge, to keep it in good repair for seven years or for any length of time; that this defective condition of the bridge had existed, and was known to the county commissioners, road overseers, road superintendents, and other road authorities of the county, for several weeks prior to the injuries, and they had failed and refused

to remedy or repair the defects; and that on September 3, 1901, the plaintiff made a written demand on the defendant for payment for the injuries so received, and presented to the board of commissioners of roads and revenues of the county his claim for the amount here sued for, and it was refused.

Cited by counsel: Political Code, §§ 341-6, 602-3, 623; Acts 1888, p. 39; 41 *Ga.* 227, 228; 54 *Ga.* 25; 59 *Ga.* 832, 835; 64 *Ga.* 69; 80 *Ga.* 489; 81 *Ga.* 48; 90 *Ga.* 72; 92 *Ga.* 130; 103 *Ga.* 106; 107 *Ga.* 811; 112 *Ga.* 779; 115 *Ga.* 348.

*W. A. Post, W. G. Post,* and *W. C. Wright,* for plaintiff.

*W. L. Stallings, Hewlett A. Hall,* and *R. W. Freeman,* for defendant.

SIMMONS, C. J. The key that unlocks the bolt of controversy in this case is the distinction between a dependent liability and an independent liability. Prior to the act of 1888, the liability of the county was in every case dependent on the liability of the contractor, and on the further fact of neglect on the part of the county authorities to take from the contractor the requisite bond and security. This view is clearly presented in the dissenting opinion found in *Davis* v. *Horne,* 64 *Ga.* 70, and is the basis of all the holdings which limit the county's liability to a period of seven years unless it be shown that the contractor stipulated to make repairs for a longer term than seven years. The proposition that a dependent liability does not arise where the liability on which it depends has not arisen, and at a time when the latter could not possibly arise, has the force of a self-evident truth. It can not be doubted that the intent of the code was that the bond and security exacted of a contractor should cover the whole time during which it was his duty to keep in repair a bridge built by him under contract with the proper county authorities. This time could not be less than seven years, but might be more in case of express stipulation. In either event, the bridge becoming out of repair or being out of repair after the time expired would be no concern of the contractor as such, and could not possibly subject him to responsibility for the consequences. He would then be related to the bridge just as he would if it had been built by the county itself. The same would be true of his sureties, if there were any, and of the county if no bond and security had been required.

The act of 1888 changed all this, so far as the county is concerned. It made it discretionary with the county authorities to exact bond and security, or not to do so, and in either event it declared that the county should be liable in every case "for all injuries caused by reason of any defective bridges, whether erected by contractors or county authorities;" not only liable but *prima-rily* liable, meaning by this expression the reverse of dependently liable, changing the nature of the previous liability from dependent to independent or principal liability. It is plain, therefore, that the new liability set up is unlimited in time, for there is nothing to limit it by. As long as there was a principal liability restricted to a given time, and the liability of the county dependent on that, the latter was also necessarily restricted to the same time. But now there is certainly nothing which puts a time limit as to bridges built by the county since the passage of the act of 1888; and as to bridges built by contractors there is nothing in this respect to distinguish them from the others.

We are quite certain that the judgment below ought to be

*Reversed. By five Justices.*