## SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY *v.* GILL.

1. There was no error in overruling the motion for a continuance.
2. Under the provisions of the Civil Code, § 4760, two or more justices of the peace, upon the opinion of twelve freeholders, have jurisdiction to abate a public nuisance which tends to the immediate annoyance of the citizens in general, and which causes special damage to a citizen in which the public do not participate. *Macon & Brunswick R. Co.* v. *State ex rel. Pate*, 50 *Ga.* 156, reviewed and overruled.
3. The private citizen specially damaged by such a nuisance may proceed in his own name and behalf to have the same abated.
4. An assignment of error, in a petition for certiorari, "that said twelve freeholders were not summoned in accordance with law; that the selection of said freeholders was irregular and illegal, and contrary to the constitutional rights of [the defendant] under the constitution of the State of Georgia and

47

under the constitution of the United States," and that the justices of the peace erred in overruling a motion to dismiss the proceedings to abate the nuisance upon such grounds, was not sufficiently specific, and therefore presented no question for determination by the judge of the superior court.

5. For the same reason, there was no merit in an assignment of error " that the sections of the Code of Georgia, under the terms of which the said twelve freeholders were chosen, summoned, and sworn, . . are unconstitutional and are null and void.

6. The order of the board of commissioners of roads and revenues, purporting to establish the road in question as a public road, was admissible in evidence, in connection with the parol evidence as to the prescriptive right of the public to the free and unobstructed use of such road, though the order was unaccompanied by the record of the proceedings upon which it was based.

Argued July 25, — Decided October 30, 1903.

Certiorari.    Before Judge Seabrook.    Liberty superior court. November 18, 1902.

*William L. Clay*, and *Shelby Myrick*, for plaintiff in error: Justices of the peace and freeholders had no jurisdiction: Civil Code, §§ 4760–1, 3658 ; *Vason* v. *R. Co.*, 42 *Ga.* 637 ; *M. & B. R. Co.* v. *Pate*, 50 *Ga.* 156.    Notice of proceedings insufficient: *Ruff* v. *Phillips*, 50 *Ga.* 133.    Selection of freeholders illegal: Civil Code, § 4760 ; *Salter* v. *Taylor*, 55 *Ga.* 311.    Certified copy of order establishing public road, inadmissible without complete record :    Code of 1868, §§ 643–5 ; 15 Am. & Eng. Enc. L. (2d ed.) 387; 12 Id. (1st. ed.) 268, 274 ; 1 Black on Judgments, § 282 ; 1 Greenl. Ev. §§ 511, 513 ; *Gibson* v. *Robinson*, 90 *Ga.* 762 ; Schroeder *v.* Village (Mich.), 54 N. W. 642 ; Shepherd *v.* Turner (Cal.), 62 Pac. 106 ; O'Connell *v.* R. Co. (Ill.), 56 N. E. 359 ; State *v.* Curtis (Wis.), 56 N. W. 475 ; Williams *v.* Giblin (Wis.), 56 N. W. 645 ; Miller *v.* Brown, 56 N. Y. 384 ; ·Crossley *v.* O'Brien, 87 Am. Dec. 334; Zeibold *v.* Foster (Mo.), 24 S. W. 155.    The order was inadmissible because too indefinite and uncertain: 15 Am. & Eng. Enc. L. (2d ed.) 383; People *v.* Whitaker, 101 Cal. 597 ; Yeamans *v.* Com'rs, 16 Gray, 36.    The certificate attached to the order was not sufficient to authorize its introduction in evidence: *Elliott* v. *Deason*, 64 *Ga.* 64; *Gibson* v. *Robinson*, 90 *Ga.* 762.    The proceedings lacked due process of law.    The court was held at an illegal place : *Johnson* v. *Heitman*, 67 *Ga.* 482 ; *Tarpley* v. *Corputt*, 65 *Ga.* 257, 259 ; *Reed* v. *Thomas*, 66 *Ga.* 595.

*Donald Fraser*, contra, cited, as to abatement of nuisance: Civil Code, §§ 3861, 3859, 3858, 4760, 4766 ; Cobb's Dig. 817 ;

*Ga. Rep.* 28/398; 33/601 (5); 40/87; 42/631, 637–8; 50/132, 156; 55/311; 60/266; 76/804–7; 81/615 (4); 90/66.

FISH, P. J. J. T. Gill filed a petition under the Civil Code, § 4760, with two justices of the peace of Liberty county, against the Savannah, Florida and Western Railway Company, to abate an alleged nuisance. The petition alleged, in substance, that Gill had at the time, and had had for several years previous thereto, a store in which he conducted a general merchandise business, within fifty yards of the track of the defendant company, about a quarter of a mile east of Walthourville station; that the store was situated immediately upon the public road leading from Hinesville to Johnston's station, across the railroad at that point; that the road was not obstructed when he began business in his store; that subsequently the railroad company closed such public road at the point where it crossed its track, and had kept it closed; that the obstruction to such road was an immediate annoyance to the citizens in general, and worked inconvenience and special damage to him, for the reason that his customers could not reach his store without inconvenience, which had decreased his trade. The obstruction complained of consisted of a wire fence built by the railroad company across the road. Upon the hearing before the justices of the peace and twelve freeholders of the county, a verdict was rendered finding that the road obstructed was a public road, and that the obstruction was a public nuisance which worked special damage and injury to Gill in particular, and that it should be abated; upon which verdict a judgment was rendered by the justices, ordering the abatement of the nuisance. The railway company carried the case, by certiorari, to the superior court, where the certiorari was overruled, and the company excepted.

1. When the case was called for a hearing before the two justices of the peace, the railroad company moved for a continuance, upon the ground that it had not been given a reasonable notice as to the nature of the complaint, and as to the time and place it would be passed upon, and upon the further ground that the complaint upon which the notice issued, or a copy thereof, had never been served upon it. This motion was overruled, and in the petition for certiorari this ruling was alleged to be erroneous. It will be observed that the motion was not to dismiss the proceeding upon the ground that no legal service had been perfected upon the de-

fendant, or for any other reason, but it was for a continuance, and there was no allegation that the movant, by reason of the alleged insufficiency of the notice, or the failure to serve it with a copy of the complaint upon which the notice was founded, was not then prepared to enter upon the trial of the case, or was less prepared to make its defense to the proceeding than it otherwise would have been. The mere general allegation that the defendant had not been given a reasonable notice of the nature of the complaint and the time and place of the trial, without in any way indicating wherein the notice was defective, was insufficient for any purpose. It is unnecessary to decide whether, in a case like this, the law requires a copy of the complaint lodged with the justices of the peace to be served upon the defendant. Whatever may be the law upon this question, the failure to serve the railroad company with a copy of the complaint was not a good ground for a continuance of the case, unless, by reason of such failure, the defendant was taken by surprise and less prepared to make its defense than it would have been if it had been served with such copy. By making a motion to continue, instead of a motion to dismiss, the defendant waived any defect, if such there was, in the process by which it was brought before the tribunal which was to try the case. This motion was an implied admission that the justices of the peace had jurisdiction of the defendant, in so far as such jurisdiction depended upon the question of the legality of the service. The motion was not an attack upon the jurisdiction, but a plea for time in which to prepare for defense, and was fatally defective in that it did not in any way show that further time was necessary for such purpose. A motion to continue is addressed to the sound discretion of the court, and, for the reasons above indicated, we do not think there was any abuse of discretion in the ruling complained of.

2. One of the questions presented by the certiorari was, whether the two justices of the peace, under the provisions of the Civil Code, § 4760, had jurisdiction to abate the particular nuisance complained of, upon the complaint filed by Gill. It is contended by the plaintiff in error that the nuisance complained of is not such a public nuisance as can be abated by two justices of the peace, under the provisions of this section of the Civil Code. It is further contended that private citizens can not abate a public

nuisance, but the petition therefor must proceed for the public, on information filed by the solicitor-general of the circuit wherein the nuisance is alleged to exist. In support of the first mentioned of these contentions, counsel rely upon the decision in *Macon & Brunswick Railroad Co.* v. *State ex rel. Pate,* 50 *Ga.* 156, and say that, under the ruling there made, a public nuisance can not be abated by two justices of the peace, "unless such public nuisance is either 'manifestly injurious to the public health and safety, or tends greatly to corrupt the manners and morals of the people;'" and that, "in the case at bar neither of these consequences was claimed nor even suggested." The decision relied upon would, if followed, sustain the contention of counsel. That decision is, however, now under review, and we are not obliged to follow it as a binding precedent. It must stand or fall according to its intrinsic merits alone. It was there held that a public bridge across a navigable river, a public highway, could not be abated, under what is now section 4760 of the Civil Code, by two justices of the peace and twelve freeholders, because the same was not such a nuisance as is contemplated by that section, in that it did not tend to the immediate annoyance of the citizens in general, either by being manifestly injurious to the public health and safety, or by tending to corrupt the manners and morals of the people, but was simply an alleged obstruction of a navigable river by the erection and maintenance of a railroad bridge by a chartered corporation of the State. In making such ruling, we are of opinion that the court misinterpreted the statute. The words of the statute are: "Any nuisance which tends to the immediate annoyance of the citizens in general, is manifestly injurious to the public health and safety, or tends greatly to corrupt the manners and morals of the people, may be abated," etc. The evident meaning of the statute is to provide for the abatement of three classes of public nuisances, viz.: (1) those which tend to the immediate annoyance of the citizens in general; (2) those which are manifestly injurious to the public health and safety; (3) those which tend greatly to corrupt the manners and morals of the people. The first clause of this section can not be arbitrarily ignored; either it defines a particular class of public nuisances, or it is a part of the description of each of the two classes of public nuisances to which the court in the case under review confined the statute.

The court, in that case, construed the statute as if it had read : " Any nuisance which tends to the immediate annoyance of the citizens in general *and* is manifestly injurious to the public health and safety," etc. This seems to us to be an unnatural and strained construction of the language of this section of the Civil Code, and its effect would be that no nuisance manifestly injurious to the public health and safety, or which tends greatly to corrupt the manners and morals of the people, could be abated as the section provides, unless it were also shown that such nuisance tended to the immediate annoyance of the citizens in general.

We do not think it can be said that any nuisance which may be shown to be manifestly injurious to the public health and safety necessarily tends to the immediate annoyance of the citizens in general, or that any nuisance which tends greatly to corrupt the manners and morals of the people tends to the immediate annoyance of the citizens in general. If this were true, then, under the construction given to this section in the case in the 50th *Georgia*, the first clause thereof would be entirely superfluous; and if it is not true, then, as stated above, neither of these classes of nuisances could be abated under this section, unless the proof also showed that it tended to the immediate annoyance of the citizens in general. That this section of the Civil Code defines three distinct classes of public nuisances we think clearly appears when we consider it in connection with the Penal Code, § 641, which declares : " Any person who shall erect, or continue after notice to abate, a nuisance which tends to annoy the community, or injure the health of the citizens in general, or to corrupt the public morals, shall be guilty of a misdemeanor." It is to be noted that both section 4760 of the Civil Code and section 641 of the Penal Code are taken from the Penal Code of 1833. Section twenty-four of the tenth division of that code declared : "All nuisances not here mentioned, which tend to annoy the community, or injure the health of the citizens in general, or to corrupt the public morals, shall be indictable, and punished by fine or imprisonment in the common jail of the county, or both, at the discretion of the court. And any nuisance which tends to the immediate annoyance of the citizens in general, is manifestly injurious to the public health and safety, or tends greatly to corrupt the manners and morals of the people, may be abated and suppressed by the order of any two or

more justices of the peace of the county, founded upon the opinion and verdict of twelve freeholders of the same county." etc. Cobb's Dig. 817. Here we see the same three classes of public nuisances declared to be indictable and declared to be abatable by any two or more justices of the peace. In *Vason* v. *South Carolina Railroad Co.*, 42 *Ga.* 631, the court held that an indictable nuisance was an abatable nuisance. On pages 631 and 632 McCay, J., said: "Our statute defining an *abatable* nuisance defines an *indictable* nuisance, save that it adds 'immediate,' 'manifestly,' and 'greatly,' before the words, 'annoyance,' 'public health,' and 'public morals,' and was evidently intended not to authorize the abatement of an act which was not indictable, but to authorize the abatement of indictable nuisances of peculiar virulence, without waiting for an indictment."

For the foregoing reasons, we are of opinion that the ruling made in *Macon & Brunswick Railroad Co.* v. *State ex rel. Pate*, supra, in so far as it depended upon the construction there given to the provisions of the Civil Code, § 4760, is not sound, and, leave having been granted to review the same, it is to this extent overruled. We are clearly of opinion that the two justices of the peace had authority, under this code section, to abate a nuisance of the character here complained of; a fence constructed across a public road, for the purpose of preventing its use, being a nuisance which tends to the immediate annoyance of the citizens in general.

3. We think it is apparent from the provisions of the Civil Code upon the subject that a private citizen may proceed, in his own name and behalf, to have a public nuisance abated, if he is specially injured thereby, that is, if he is injured or damaged by such nuisance in a way different from that in which the citizens in general are injured or damaged. Section 3858 declares: "Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the State. A private nuisance gives a right of action to the person injured." The next section declares: "If, however, a public nuisance causes special damage to an individual, in which the public do not participate, such special damage gives a right of action." Unquestionably, then, if a public nuisance causes special damage to a private citizen, he has a right of action therefor. It is con-

tended, however, that the "right of action" here referred to is a right to bring an action to recover damages, and not the right to bring an action to abate the nuisance.    But the rule is well established that whenever the special injury or damage which a person suffers from a public nuisance is such as to support an action at law for damages, he may abate the nuisance on his own motion.    2 Wood on Nuisances, § 733, p. 942, and cases cited.    If from the wording of section 3559 there is any doubt as to the right of a private citizen to proceed, in his own name, to abate a public nuisance which causes special damage to him, in which the public do not participate, such doubt is effectually removed when we consider the provisions of the Civil Code, §§ 4761, 4766. The first of these sections declares: "Private citizens can not generally interfere to have a public nuisance enjoined, but the petition must proceed for the public on information filed by the solicitor-general of the circuit."    It will be seen that this section has both an expressed and an implied meaning, the expressed meaning being, that, as a general rule, private citizens can not interfere to have a public nuisance enjoined, and the implied meaning being that this general rule is subject to exception.    If a private citizen can under no circumstances proceed to have a public nuisance abated, then the word "generally" in this section is both meaningless and superfluous.    Its presence in the section shows that the rule which the section announces is simply a general rule, to which there is exception.    This is clearly evident from section 4766, which provides:    "A public nuisance may be abated on the application of any citizen specially injured, and a private nuisance on the application of the party injured."    The contention that if a private citizen has the right to institute a proceeding to abate a public nuisance which causes him special injury or damage, he must proceed in the name of the public, through the solicitor-general of the circuit, is clearly without merit.    If he proceeds in that way, the application to have the nuisance abated is the application of the public, and he is moving in behalf of the public and not in his own interest; whereas his right, as a mere private citizen, to move at all is because he is specially injured, and is based not upon any right which the public has in the matter, but upon his own exclusive right arising out of his own exclusive injury.    It would be anomalous if a person whose right to proceed at all is based

upon an injury in which the public do not share was compelled to proceed in the name of the public to redress such injury. The nuisance complained of was of a mixed character. It was both public and private; public in so far as it prevented the people generally from passing over the public road at the place where the defendant had built the fence across it, and private in so far as it interfered with the complainant's business and affected the value of his property by interfering with the free and convenient access of customers to his store. So, as in all cases of a similar character, the proceeding was really against the nuisance in its private character.

While section 4760, in terms, provides only for the abatement of a public nuisance, in the manner therein specified, it has been several times held that a private nuisance may be abated under that section. *Ruff* v. *Phillips*, 50 *Ga.* 130; *Salter* v. *Taylor*, 55 *Ga.* 310; *Hart* v. *Taylor*, 61 *Ga.* 156; *Holmes* v. *Jones*, 80 *Ga.* 659. In the last three cases cited the nuisances abated were obstructions in private ways. Surely if a private nuisance may be abated under this section, upon an application made in the name of the party injured thereby, a nuisance which is both public and private may be abated under it, upon the application and in the name of any citizen who suffers special injury therefrom in which the public does not participate. If he has, as we have demonstrated, the right to proceed in his own name to abate such a public nuisance, he has the right to avail himself of the means provided for the abatement of such a nuisance. In *Wetter* v. *Campbell*, 60 *Ga.* 266, Campbell filed a petition, under the provisions of section 4760, to abate a nuisance alleged to have been caused by Wetter. The nuisance complained of was a dam erected by Wetter across a creek, which caused the water to overflow the lands of petitioner and others in the neighborhood, "destroying growing crops, and preventing further cultivation, tending to the immediate annoyance of the citizens in general, and working hurt, damage, and inconvenience to petitioner." Upon the hearing before the justices of the peace the defendant demurred to the proceeding, on the ground that the justices of the peace had no jurisdiction thereof. The demurrer was overruled. This court affirmed the judgment of the court below, holding that the justices of the peace had jurisdiction to abate such a nuisance. If any authority were needed to sustain the prop-

osition that obstructing a public road, so as to prevent the customers of a merchant from using the same as a means of access to his store, causes him to sustain from the nuisance special damage, that is, damage not shared in by the public at large, it may be found in *Harvey* v. *Georgia Southern & Florida Railroad Co.*, 90 *Ga.* 66, and *Brunswick & Western Railroad Co.* v. *Hardy & Co.*, 112 *Ga.* 605. The justices of the peace had jurisdiction to abate the nuisance complained of upon the application of the petitioner.

4. Error was assigned, in the petition for certiorari, upon the ground that the justices of the peace erred in overruling a motion to dismiss the proceeding upon the ground that the jury had not been summoned in accordance with law, and no legal jury was present to try the case; that the twelve freeholders had not been summoned by the sheriff in accordance with law and were not qualified to try said matter. The error assigned upon this ruling is, "that said twelve freeholders were not summoned in accordance with law; that the selection of said twelve freeholders was irregular and illegal, and contrary to the constitutional rights of the Savannah, Florida & Western Railway Company under the constitution of the State of Georgia and under the constitution of the United States." There is no merit in this assignment of error because it fails to allege wherein the twelve freeholders were not lawfully summoned, or wherein they were not legally selected, or in what way their selection was contrary to the constitutional rights of the defendant. It leaves the whole matter in the wide field of conjecture, and presents no question for determination by a court.

5. The same may be said with reference to another assignment of error, "that the sections of the Code of Georgia under the terms of which the said twelve freeholders were chosen, summoned, and sworn . . are unconstitutional and are null and void."

6. In the petition for certiorari, error is assigned upon the ruling of the justices of the peace in admitting in evidence, over the objection of the defendant, a certified copy of the order of the board of roads and revenues of Liberty county, establishing the road in question as a public road. This document was as follows:

"The application for public road from Johnston station to Hinesville, leaving the Darien road about a quarter mile below and by Allen's mill-pond, through Thomas Simmons' lane and crossing

railroad about one fourth mile below the station east, is hereby granted on the understanding that the road running by York Winn's place shall take the same route as at present and shall not interfere with his field.

"I hereby certify that the foregoing is a true copy from the minutes of the meeting of the commissioners court as it appears of record September 7th, 1875. The said minutes are signed by Nicholas Brown C. C. G. A. Anderson C. C. J. M. Smith C. C. Hinesville, Ga. January 25th, 1902.

"E. C. Miller, Clerk of Board County Commissioners Liberty County, Ga."

The objections to the admission of this paper in evidence were: "1st. It was not properly authenticated, or that the certificate was not in proper form, and its contents were insufficient to admit the document in evidence; 2nd. That the contents of the document were too indefinite and meager; and 3rd. That no record of the proceedings leading up to the granting of the order was sought to be introduced, and that the order itself was not sufficient to entitle it to go in evidence; 4th. That the order did not show that the public road therein granted and mentioned had been established according to law." The first and second of these objections were themselves "too indefinite and meager" to properly raise any question for decision. The first objection failed to point out wherein the document in question was not properly authenticated, or wherein the certificate was not in proper form, and the second objection failed to indicate in what respect "the contents of the document were too indefinite and meager." What we have said above in reference to indefinite and general assignments of error applies also to such objections to the admissibility of evidence. The third objection was sufficiently specific, and the fourth, when considered in connection with the third, as it was doubtless intended to be, may be held to be sufficient. These objections present the question whether an order of a board of commissioners of roads and revenues, establishing a public road, is admissible in evidence without being accompanied by the record of the proceedings upon which such order was based. Counsel contend that the board of commissioners which granted this order was a court of limited jurisdiction, and invoke the rule applicable to the introduction in evidence of the judgments of courts of this class. This contention

presents an interesting question which we do not deem it necessary to decide in the present case.    The right of the public to the free and unobstructed use of a given highway may be established by prescription.    Elliott on Roads and Streets, § 178; State *v.* Green, 41 Iowa, 693; Summers *v.* State, 51 Ind. 201; Town of Marion *v.* Skillman, 127 Ib. 130; Town of Lewiston *v.* Proctor, 27 Ill. 414; Western Railway of Alabama *v.* Alabama Grand Trunk R. Co., 96 Ala. 272; State *v.* Morse, 50 N. H. 9; Mosier *v.* Vincent, 34 Iowa, 478; McWhorter *v.* State, 43 Tex. 666.    See also Eyman *v.* People, 1 Gilm. 4; Nealy *v.* Brown, Id. 10.

This court has recognized this principle in *Green* v. *Bethea*, 30 *Ga.* 896, where it was held : "Where the owner of land through which a road passes has permitted it to be used for that purpose, he keeping a gate at each end to protect his plantation, the public have only acquired a restrictive prescriptive right; and to that extent, and with that qualification, are entitled to enjoy it."    In reference to the length of time in which a road must be used by the public as a highway in order to establish a prescriptive right to it as such, most of the courts hold that it must be used for a period of time conforming to that necessary to establish title to real estate by prescription.    Some courts, however, hold that the open, uninterrupted, and continuous use of a road by the public for a much less period of time will raise a presumption in favor of the establishment of the road as a public highway.    In some of the States the time necessary to establish the road by prescription has been fixed by statute.    In this State, actual adverse possession of lands by itself, for twenty years, will give good title by prescription against every one except the State, or persons laboring under the disabilities specified by the law.    There was ample evidence to support a finding by the jury that the road in question had been openly, uninterruptedly, and continuously used by the public, as a public road, for more than twenty years, before the defendant company obstructed it; and this was sufficient to establish a prescriptive right in the public to its free and unobstructed use as a public highway.    Granting that the certified copy of the order of the proper county authorities, purporting to establish the road as a public road, was not admissible for the purpose of showing that the road was duly established by this order, without being accompanied by proof that the preliminary requirements

of the law essential to the grant of such an order had been complied with, still, considering the evidence upon the question of prescription, we think there was no error in admitting this certified copy in evidence.   This document was admissible, in connection with the parol evidence that was introduced, for the purpose of showing that the road had been laid out and opened as a public road ; that when the work of laying out and opening the road was performed, it was done under the order of the public authorities and for the purpose of establishing a public road, and that when the public began to use the road they used it as a public road.   It also was admissible, in connection with the parol evidence, for the purpose of fixing the time when the prescription in favor of the public began to run.   It was admissible for the purpose of showing under what claim or color of right the public began and continued to use the road.   The parol evidence alone might have been sufficient to show that the road had been established by prescription ; but by the introduction of this order it was made clear that the public right to the highway, by reason of twenty years open, uninterrupted, and continuous user thereof, was referable to the claim or color furnished by the order of the duly constituted authorities for the laying out and opening of the road.   Elliott on Roads and Streets, § 173.   Its introduction tended to remove any doubt that there might otherwise have been as to the claim under which the use of the road began.   It served to show that, whether lawfully or unlawfully laid out and opened, it was intended from the beginning to be a public, and not a private road.

*Judgment affirmed.   All the Justices concur.*