PENICK *v.* COUNTY OF MORGAN, and *vice versa.*

1. Where land is dedicated by its owner for public use as a public road, the county authorities having jurisdiction over roads can accept such dedication and open a new public road over it without complying with the requirements of the Civil Code, § 520 et seq.
2. An express dedication of land by the owner thereof for public use as a public road, and an express acceptance thereof by the proper county authorities, need not be shown; but such dedication and acceptance, respectively, may be shown by the acts of such owner and authorities.
3. A dedication of land by the owner thereof for public use as a public road, and the use of such road by the public as a route of travel, without some recognition of such road on the part of the county authorities, would not make such road a public road.
4. A cul de sac may be a public road.
5. A book the contents of which state it is a road register of a certain county, and show entries describing a road as a public road, is not admissible, upon the trial of a case, to show such road was a public road several years prior to such trial, when there is nothing to show, or from which it can be inferred, when such entries were made.

25

6. Where a county, in a suit against it, denies that a certain road is a public road, and there is evidence that the county superintendent of roads opened the road, built bridges on it, and worked it for several years thereafter, the minutes of the county commissioners having jurisdiction of roads showing that, upon an application to them to open the road and make it a public road, two of them were appointed a committee "to go over the ground and investigate it and report to the next meeting," and that "The committee appointed to look into the practicability of opening [such road] . . . report in favor of the same, and the report is adopted," are admissible, in connection with such oral testimony, to show that the county commissioners intended to open the road as a public road.

7. Where it appeared that county commissioners having jurisdiction of roads appointed two of their body to open and lay out a public road, under the facts in this case it was not error to admit testimony that such two commissioners opened and laid out the road, or that they showed the county superintendent of roads where they laid it out.

8. Where one of the questions involved in a case is whether or not a road was a public road at a particular time when an injury occurred, evidence that the county hands, under the county superintendent of roads, worked the road after such time, was admissible in connection with evidence that such road had been worked by the county authorities prior to such injury.

9. The petition in this case was not subject to the general demurrer.

Argued February 8,—Decided August 19, 1908.

Action for damages. Before Judge Lewis. Morgan superior court. March 6, 1907.

*F. C. Foster* and *E. W. Butler*, for plaintiff.

*Q. L. Williford* and *George & Anderson*, for defendant.

HOLDEN, J. The plaintiff brought suit against the County of Morgan, alleging, that since December 29, 1888, the county authorities of said county caused a bridge to be erected on one of its public roads; that in November, 1903, while the plaintiff, with his wife and child, was driving across said bridge in a buggy drawn by two horses, the bridge broke in the middle and fell through, causing the damages for which he sued; that he was without fault, and the damages resulted from the defective construction of said bridge, which defective construction was known to the county authorities. The plaintiff offered in evidence a book. At the top of each page thereof was printed the words "Public Road Register." This book showed a public road named "Road leaving Buckhead and Park's Mill Road, Swords, Ga.," and described as leading from Buckhead, Park's Mill Road, via Swords, to Buckhead and Park's Mill Road, 1½ miles in length, 20 feet wide, and in the

second class of roads. The plaintiff also introduced the book of minutes of the county commissioners of December 13, 1900, containing the following entry: "Mr. J. B. Swords appeared before the board, asking that an old road near his place be opened and made a public road. Messrs. Walker and Walton are appointed a committee to go over the ground and investigate it and report to the next meeting." Also, an entry dated Jan. 1, as follows: "The committee appointed to look into the practicability of opening a road near J. B. Swords, in Kingston District, report in favor of the same, and the report is adopted." The only oral evidence of the plaintiff necessary to be set out is as follows: The county authorities were petitioned to open the road from Swords to Park's Mill. There was a petition signed by Swords and others. The superintendent of public roads in 1900 cut the road and built the bridge in question with pine poles as sleepers. The life of a pine pole would not be longer than two years. Oak timbers would last a good many years. The road was laid out in 1899 or 1900. Walker and Walton, two of the county commissioners, laid out the road. After the accident the bridge was rebuilt, and the county authorities have worked the road since that time. The public has traveled the road ever since it was laid out. Usher Thomason owned the land through which the road runs where the bridge was built, at the time the road was laid out and the bridge built. J. B. Swords went before the county commissioners and asked them to lay out the road. Before doing this he went to Thomason and asked permission to run the road through his land. He gave the permission, and after that they went forward and made the road. The road has been worked regularly as a county road ever since it was first laid out, as other roads in that section of the county have been worked. When Swords brought the matter to the attention of the board, they appointed two of their members to go and open the road. It passed through Thomason's and Swords's lands, and a short space on Mrs. Knight's land. Since it has been laid out the road has been worked and used by the public as a public road. Thomason testified that he agreed to allow the county authorities to have a road, and "I yielded to it, and always permitted them to have a road." Plaintiff testified that in October, 1903, the bridge fell in while he was driving over it, causing injuries which he detailed and for which the suit was

brought. He knew nothing of the defective condition of the bridge. Upon the conclusion of the evidence, the court directed a verdict for the defendant, and the plaintiff excepted. The defendant by cross-bill excepted to rulings hereinafter stated.

1. The main question involved in this case is whether or not the proved facts were such as to authorize a jury to find that this road on which the alleged injuries occurred was a public road. One method by which a public road can be established is by complying with the requirements of the Civil Code, §520, et seq. By the use of this method private property can be condemned. These sections provide a way for the citizen to have brought before the county authorities the question whether or not a public road shall be established in a particular location; and the citizen can, at least in some instances, review by certiorari the action of the county authorities in determining the question as to whether or not the road should be established. *Atlanta & W. P. R. Co.* v. *Redwine,* 123 *Ga.* 736 (51 S. E. 724). Even when the owner of the land through which persons desire a public road is willing to dedicate it to the public for this purpose, and the county authorities refuse to accept the dedication and open a public road, such persons can petition the county authorities, whose duty it will be to appoint the committee as provided in the Civil Code, §520, and pass upon the question as to whether or not the new road shall be opened. The method provided in these sections for opening a new road is not the only method. If it were, a new road could never be established by prescription; but it is now the law, without question, that this can be done. *Savannah Railway Co.* v. *Gill,* 118 *Ga.* 737 (45 S. E. 623) ; *Southern Ry. Co.* v. *Combs,* 124 *Ga.* 1004 (53 S. E. 508) ; *McCoy* v. *Central Ry. Co.,* ante, 378 (62 S. E. 297) ; *Johnson* v. *State,* 1 *Ga. App.* 195 (58 S. E. 265). The method provided for in these sections is not an exclusive, but only a cumulative one. If a person wishes to give his land to the public for a public road, and the county authorities are willing to accept it and open a public road, they can do so without incurring expense and delay in following the requirements of these sections. Under these sections no alteration or discontinuance of a road, or the opening of a new road, can be had unless application is made by some one for this purpose; and to hold that the only method by which county authorities can open new roads is provided for in these sections

would mean that they could not open a new road without some one making an application therefor. If the owner of land dedicates land for use as a public road, the county authorities can, in their discretion, accept it for a public road and open a public road over it, without any petition being filed therefor, notice published, or even any order to that effect. They can not take land for a public road, against the owner's consent, without condemning it according to law and paying for it; but if the owner wishes to give the land for this purpose, the county authorities can, in the exercise of a sound discretion, accept it, and can, in the exercise of such discretion, open a new road without delay or any formalities whatever. The acceptance of land dedicated and the opening of a new road over it is a matter in their discretion. The question whether their action, in the exercise of a sound discretion, can or can not be reviewed by a higher court is not before us for decision; but when a dedication is made and accepted and a new road opened, their acts stand as valid, and the new road is a public road, as far as the public is concerned, until their action is set aside by themselves, or by a higher court if it can be reviewed by a higher court. The citation provided for in section 521 was not published, and the road in question did not become a public road under section 520 et seq., because section 523 provides that all public roads established without a substantial compliance with the provisions of these sections are void. If only a part of the provisions of these sections be complied with, the road does not become a public road under them.

But the fact that the road does not become a public road under these sections, because of the failure to fully comply therewith, does not prevent it from becoming a public road by dedication of the land as a public road by the owner thereof and acceptance of it by the county authorities. This ruling does not conflict with the decisions of this court holding roads not to be public roads when the question involved is whether or not the road in question was properly established under these sections.

2. Was the evidence sufficient to authorize the conclusion that the owners of the land on which the road was established, and where the injury occurred, dedicated the land to public use for a public road, and that the county authorities accepted it for this purpose? The evidence admitted by the court showed that the road

was from one and a half to two miles long, and indicated that it ran from one road to another, across the lands of Swords, Thomason, and Mrs. Knight. Thomason owned the land where the injury occurred. Swords was one of the applicants before the county authorities for the establishment of the new road, a portion of which was to run through *his* land. The evidence of Thomason was that he agreed to give the land to the county commissioners; that he had agreed to let them have the road through it, and "yielded to it, and always permitted them to have the road." Swords testified that Thomason "had stood by his donation ever since" the road was opened. There was evidence to the effect that the road had been worked by the county authorities, had been used by the public, and had been considered a public road since it was first laid out. Was not this evidence, in connection with the minutes of the county authorities and the other evidence in the case, sufficient to make it proper to submit to the jury the question whether or not there had been a dedication of the land by Swords and Thomason, and an acceptance by the county authorities? There can be no dedication of property to public use without an intention on the part of the owner to dedicate, and before dedication can become complete there must be an acceptance. Whenever there is a question as to the good faith of a party involved in a case, he can testify that he acted in good faith. *Hale* v. *Robertson,* 100 *Ga.* 168 (27 S. E. 937) ; *Acme Brewing Co.* v. *Central R. Co.,* 115 *Ga.* 494 (42 S. E. 8). It is likewise true that when there is involved in a case a question as to what was the intention of a party, he can testify what was his intention. *Georgia Railroad Co.* v. *Atlanta,* 118 *Ga.* 486, 489 (45 S. E. 256). The testimony of Thomason stated what was his intention. The testimony of Swords and Thomason, indicating their acquiescence in the continuous use of this road by the public since it was first laid out, and the other facts in the case, were such as to make it proper that the court should leave to a jury the question whether or not there was a dedication by Swords and Thomason. *Parsons* v. *Trustees,* 44 *Ga.* 529; *Swift* v. *Lithonia,* 101 *Ga.* 706 (29 S. E. 12) ; *Georgia R. Co.* v. *Atlanta,* supra; *Mayor* v. *Franklin,* 12 *Ga.* 239; *Healey* v. *Atlanta,* 125 *Ga.* 736 (54 S. E. 749). The order of the county authorities adopting the favorable report of the committee appointed by them to investigate the

question whether or not the road should be opened and made a public road, the working of the road and the building of the bridge on it by the county authorities, and the use of it by the public since it was first laid out, constituted sufficient proof to make it proper that the court should leave to a jury the question as to whether or not there had been an acceptance of the dedication by the proper county authorities, if the land was offered as a dedication. *Kelsoe* v. *Oglethorpe,* 120 *Ga.* 951 (48 S. E. 366, 102 Am. St. R. 138), and authorities lastly cited above.

3. Under the Civil Code, § 3591, if an owner of land expressly or by his acts makes a dedication of it for public use as a public road, and the property is so used for such a length of time that the public accommodation or private rights may be materially affected by an interruption of the enjoyment, such owner can not afterwards appropriate it for private purposes. However, the dedication of land by the owner thereof for use as a public road, and use by the public of such road as a route of travel, would not of itself make the road a public road so as to charge the county with the burden of its repair and maintenance, unless the dedication was accepted by the county authorities having jurisdiction over roads or there was evidence of their recognition of the road as a public road, showing acceptance. *Georgia R. Co.* v. *Atlanta, Parsons* v. *Trustees, Kelsoe* v. *Oglethorpe,* supra. The existence of a public road carries with it burdens on the county, of working it and keeping it in repair; and these burdens could not be imposed on the county simply by an individual dedicating his land for use as a public road, and by the public using the road for travel. Before a road can become a public road, there must at least be some recognition of it as a public road by the county authorities having jurisdiction over roads.

4. Whether the evidence would authorize a finding that Mrs. Knight made a dedication of the land which she owned, and over which the road passed, is not necessary now to be considered. The evidence admitted by the court was sufficient to authorize the conclusion that this road ran from one road to another and had an opening at both ends. If Mrs. Knight owned the land over which the road passed at one point, and the facts were sufficient to make the road a public road except where it passed through her land, and it therefore had an opening at one end, it would be

a public road up to the land of Mrs. Knight. A cul de sac may be a public road. A road may go to a park, or some public institution, or indeed through a neighborhood, without being open except at one end; and it is not essential that a highway should be open at both ends in order for it to be a public road. 15 Am. & Eng. Enc. Law, 351; Elliott on Roads and Streets (2d ed.), §2.

5. Inasmuch as the judgment of the court below, in the direction of a verdict for the plaintiff, is reversed, it is proper that the assignments of error in the cross-bill of exceptions filed by the defendant should be passed upon. The defendant objected to the introduction in evidence of the book called the road register, and assigns error to the action of the court in overruling such objections. It appears that a witness for the plaintiff went to the office of the county commissioners and asked their clerk for the road register of the county, and the clerk gave him this book as such register. The mere declaration to some one by the clerk that a certain book was the road register would not be admissible to prove it to be the road register; and his physical act in giving him the book as the road register, in response to a request therefor, would be no more than his declaration that it was such book. The clerk might make a certified copy of what appears on the road register, and it would be admissible in evidence; but a mere declaration of his, or a physical act of his, amounting to a declaration to some one that the book was the road register, would not make it admissible. It is true that the book was obtained from the office of the county commissioners, but it is not shown when the book came into existence, or when the entries appearing therein were made. The testimony showed that the bridge was rebuilt and the road worked after the injuries were sustained; and as far as the record shows, this book may have come into existence, or the entries therein in reference to this road may have been made, after the injuries sued for were sustained. If the entries were not made until after the date of the injury, the book would not be admissible. We are clearly of the opinion that the court committed error in overruling the objections to the admission of the book in evidence.

6. The defendant complains that the court committed error in admitting in evidence the book of minutes of the county commissioners, because the entries therein did not show that the require-

ments contained in the Civil Code, §§ 520 et seq., had been complied with in establishing the road as a public road. While it is true that these entries do not comply with these requirements, the action of the county authorities, as evidenced by the entries, was admissible to show the date at which the road was opened. There was evidence to the effect that the road had been worked and used by the county authorities since it was first opened. These facts, in connection with the evidence of Thomason, might become material in considering the question as to the length of time he acquiesced in the use of the road by the public, in determining the question whether or not a dedication by him was made. This action of the county authorities referring to the road as a public road, in connection with the other testimony, was admissible also for the purpose of showing that it was intended to be laid out by the commissioners as a public road, and intended by the commissioners for use as a public road. The admission of these entries was not subject to the objection made, and the court committed no error in overruling it. *Savannah Ry. Co.* v. *Gill,* 118 *Ga.* 748, 749 (45 S. E. 623).

7. The defendant complains that the court committed error in admitting testimony that a petition headed by Swords was made to the commissioners to open this road; that Walker and Walton, two of the commissioners, went there and laid it out; that Walker went with Daniel, the county superintendent of roads, to show him where he and Walker laid out the road; and that the road was made public by the board. The testimony that a petition was made and giving the names appearing thereon was not proper evidence, because there was higher evidence of these facts. The minutes of the county authorities do not with particularity describe this road, and testimony showing that the road in question was the one referred to in the minutes would be admissible under the facts of this case. We do not mean to hold that such testimony would be admissible if the only question involved were whether or not the road was properly established under the Civil Code, § 520 et seq.; as it has been ruled that where a road is established under these sections, the location of it must be so described in the order that the record will clearly designate the road to be worked. *Green* v. *Road Board of Bibb County,* 126 *Ga.* 693 (56 S. E. 59). But as the minutes were proper evidence, it was proper to admit testi-

mony to show that the road referred to in the minutes was the road testified about. It was not proper, however, to admit oral testimony of the contents of the petition or minutes. There was no error in admitting testimony that Walton and Walker laid out the road, or that Walton showed Daniel where they laid it out; because it appears from the evidence of Swords, to which no objection was made, that the county commissioners appointed Walker and Walton, two of their members, "to go and open the road."

8. Complaint is made that error was committed in admitting the following testimony of the plaintiff: "The county hands worked said road since the bridge fell in, under the county superintendent." One of the main questions involved in this case was whether the public authorities had exercised acts of dominion and control over the road and bridge in question, indicating that it was a public road and was so treated by them. As an isolated fact, it would not be admissible to show work done by the overseer on the road after the injury occurred; but where there was evidence of work done by the county authorities before the injury, and of other acts of control exercised by them, it was competent to show a continuance of such control by showing other like acts, although one of them took place after the injury occurred.

9. The defendant filed a general demurrer to the plaintiff's petition, and complains that the court committed error in overruling it. The petition alleged that the bridge was on a public road of the county, and was constructed since December 29, 1888. The petition detailed the injuries sustained, and alleged that the plaintiff was without fault, and that his injuries were due to the defective construction of the bridge, setting forth wherein it was defective, and alleged that such defects were known to the county authorities, but were unknown to him until after the injuries were sustained. The petition was so constructed as not to deserve the demurrer filed thereto. Civil Code, § 603; *County of Tattnall* v. *Newton,* 112 *Ga.* 779 (38 S. E. 47) ; *Hackney* v. *Coweta County,* 117 *Ga.* 327 (43 S. E. 725) ; *Howington* v. *Madison County,* 126 *Ga.* 699 (55 S. E. 941) ; *Warren County* v. *Evans,* 118 *Ga.* 200 (44 S. E. 986).

*Judgment reversed on both bills of exceptions. All the Justices concur.*