### BROWN *et al.* *v.* SAMS *et al.*

1. The ordinary or county commissioners, in appointing commissioners to lay out a new road under the Political Code, § 520, are not limited to the regular road commissioners appointed for the purpose of caring for and supervising the working of public roads under the Political Code, § 584, but may appoint for such purpose any three proper and fit persons residing as near as may be possible. to where the road is intended to pass.
2. The appointing authorities are allowed a discretion in the selection of such commisssoners; and it is not the intention of the law that they should appoint men without reference to their fitness for the duties imposed upon them, merely because they live nearer to the proposed road than others who are more competent.
3. Where the order of the ordinary approving the return of the commissioners and finally granting the petition for a new road refers to the description of the road contained in the report of the commissioners, and where from the record of the proceedings before the ordinary, taken all together, the road marked out can be accurately and definitely located, such judgment is not objectionable for uncertainty.
4. As a condition precedent to laying out a public road, such damages as may be assessed against the county in favor of owners of land taken for the road must be paid. Therefore an order establishing a road as marked out by commissioners appointed for the purpose, subject to claims for damages filed by owners of land over which the road runs, is in accordance with the law as contained in the Political Code, § 566.

Submitted November 3, —Decided November 14, 1903.

Certiorari. Before J. D. Attaway, judge pro hac vice. Cherokee superior court. February 28, 1903.

*P. P. DuPre* and *Felder & Rountree,* for plaintiffs in error.
*J. S. DuPre* and *E. W. Coleman,* contra.

CANDLER, J. Sams, together with other citizens of Cherokee county, petitioned the ordinary of that county for the opening and laying out of a public road through a part of a named district therein.· The petition set forth accurately where the desired road was to begin, where it should run, through whose lands it should be laid out, where it should end, its probable length, and to what class of road it should belong; and a plat of the proposed road was attached to the petition. Upon the filing of this petition the ordinary appointed three commissioners to examine into the matter, and they were directed, in the event they found that the road as contemplated by the petition was one of public utility, to mark out the same and report to the ordinary under oath. The commissioners complied with the terms of the order, reported favora-

bly to the ordinary upon the utility of the road, and marked it out as described in the petition and as shown by the plat attached thereto. Fannie M. Brown and others, as citizens and taxpayers of Cherokee county, filed objections in the court of ordinary to the opening and laying out of the road as marked. The grounds of caveat were, (1) that the ordinary did not appoint persons to review and mark out the road from the road commissioners, but appointed private citizens; (2) that the persons appointed to review and mark out the road are not persons living as near as possible to the contemplated road, there being hundreds of persons able and qualified for such work who live nearer thereto than those appointed; (3) that the contempleted road will be of no public utility, there being two other roads that lead to and from the same points as the new road, which have been used for fifty years by the traveling public, and at a time when there was much more traveling over said roads than at the present time; (4) that the reviewers could have laid out the road at a place further to the north, which would have been more practicable, less difficult to open and keep in repair, of less damage to the enclosed lands of caveators, and equally as convenient to the traveling public; (5) that the contemplated road, if established as surveyed, will be very difficult to open and keep in repair, for the reason that it runs for the most part on the dividing line between the uplands and the bottom, where the lands are full of water all winter, and for the further reason that, if established, it will cross one creek and a number of branches, which will necessarily have to be bridged, whereas the other roads are free from these difficulties; and (6) that the road, if established, will put an unnecessary burden on the road hands of the district through which its runs, said hands having all the roads now that it is possible for them to keep in repair in the time they are required to work on the roads. The ordinary heard evidence on the questions raised by the return of the commissioners and the caveat, and ordered that the road be established as marked out by the reviewers, describing it practically as set forth in the petition. The order further provided that the road be established subject to the claims for damages filed by the owners of the lands to be occupied by the road. The objectors took the case to the superior court by petition for certiorari; upon the hearing the certiorari was overruled, and they excepted.

The first two questions raised by the petition for certiorari involve a construction of Political Code, § 520, which is as follows: "On application for any new road, or alteration in an old road, the ordinary shall appoint three road commissioners residing as near where such road is intended to pass as possible; and if they find it of public utility, they must proceed to mark it out, and make their report under oath to such ordinaries that it was laid out and marked conformably to law." The objectors insist that this section limits the ordinary, in his appointment of reviewers, to the regular road commissioners provided for in the Political Code, § 584. It will be observed that the section provides that the commissioners to be appointed by the ordinary shall reside "as near where such road is intended to pass as possible." This section is a codification of the act approved December 19, 1818, which provided that on application to the inferior court for the laying out of any new road, or for any alteration in the old road, the justices of that court should appoint three discreet and proper persons residing in the neighborhood where the road was intended to pass. The same act created the office of road commissioner, provision for which is now contained in the Political Code, § 584, and provided for the marking and laying out of new roads by the three special commissioners, who were required to report to the district road commissioners. So the original act could not have intended that the "discreet and proper persons" whose duty it was to lay off new roads were to be appointed from the persons to whom they were required to report. The district road commission provided for in the act was composed of two or more persons, one of them to be a justice of the peace. With the exception noted, no qualifications were fixed for these commissioners, and the laying out of new roads was not included in their duties. If it was intended that the road commissioners should lay off new roads, why was it provided that this duty should be performed by "discreet and proper persons residing in the neighborhood where such road is intended to pass?"

The General Assembly has construed this act as did the ordinary in this case; for in the act approved December 18, 1901 (Acts 1901 p. 79), the persons upon whom the duty is imposed of laying out new roads are designated as "special road commissioners." Inasmuch as the persons to lay out new roads were re-

quired to be " discreet and proper persons," if it had been the legislative purpose to limit the ordinary, as to appointment, to the road commissioners appointed under the Political Code, § 584 et seq., it would seem that power would have been given him to select from the road commissioners for the entire county ; but the act distinctly provides that those appointed shall live as near where the road is intended to pass as possible.　　We think that the ordinary in this case complied with the law, by appointing three men who, he says in his answer, were wise and discreet men, who had signed neither the petition for the laying out of the road nor the objections thereto ; and that he was not limited to the regularly appointed road commissioners for the county, whose duties are to care for and protect the roads after they are laid out, rather than to lay out additional roads.　　The ordinary in his answer stated that the three men appointed to lay off the road were well fitted for the duties devolving upon them ; that one of them lived near the east end of the proposed road, another near the west end, and the third about a mile and a half south of the road ; and that while there were other good citizens living nearer to the contemplated road than any of those appointed, they were either petitioners for the road or objectors to it, or in some other way directly interested in it.　　The law intended to give to the ordinary some discretion in the appointment of these commissioners, and the court below properly held that it was well exercised in this case.　　See *Ponder* v. *Shannon*, 54 *Ga.* 189 ; *Tift* v. *Dougherty County*, 74 *Ga.* 340.　　In the case last cited the reviewers appointed to lay off the road were among the petitioners, and lived several miles from the proposed new road ; and it was held, by two Justices, that it had not been made to appear wherein the proceedings were irregular or contrary to law.

The third assignment of error in the petition for certiorari is not verified by the answer of the ordinary, but on the other hand it affirmatively appears that there was no objection to the evidence referred to.　　The court was, under the law, bound to rely upon the answer rather than upon the petition for certiorari.

The judgment of the ordinary, approving the return of the commissioners and ordering the laying out of the road in accordance with the description set out in the petition, the plat thereto attached, and the report of the commissioners, was sufficiently defi-

nite.    In view of the entire proceedings, as above set forth, there is no doubt whatever as to where the road is to begin, where it is to end, or where it is to run.    Its breadth is fixed by law at sixteen feet, even if this did not appear from the record; as the petition was for the opening of a third-class road, and such a road was ordered.

Under the law the order complained of is necessarily a conditional one.    All such orders are.    When land of a citizen is taken for a public road, he must be paid for it before it is taken.    Ample machinery is provided for fixing the amount of damages to the citizen; and if, after the road is laid out, the damages allowed " transcend the utility of such road," the ordinary may revoke the road altogether, or may order it altered so as to avoid the land damaged.    Political Code, § 566.    The road can not be finally opened and appropriated to the public use until the question of damages to citizens whose land is taken therefor is settled and it is determined by the ordinary or county commissioners whether payment as fixed will be made, or the road revoked or altered.

The foregoing covers all the questions argued before this court in the brief of counsel for the plaintiff in error.    We find no error in any of the rulings made by the ordinary, and consequently no error in the judgment overruling the certiorari.

*Judgment affirmed.    All the Justices concur.*