GREEN *et al.* v. ROAD BOARD OF BIBB COUNTY,

and *vice versa.*

126 693<br>Case 2<br>e130 551

In an application under the Political Code, § 520, for the establishment of a new road, the proceedings before the county board of commissioners having exclusive jurisdiction over the subject-matter should describe the location of the contemplated road with such particularity as that the records of the county board of commissioners will clearly designate to the ministerial officers charged with the clearing and working of the road the particular location intended to be established.

(a) In such a proceeding a description of the contemplated location which gives the initial and terminal points and names certain persons "past or through" whose lands the road is intended to pass in a southeasterly direction, with a given width and length, is too indefinite; and the defect is not cured by the fact that the road was actually surveyed and "pegged out" by commissioners appointed for the purpose, there being nothing in the report of the commissioners, or otherwise of record, to indicate the courses and distances, or the manner and location of the pegs.

(b) Under the facts in this case, the order establishing the road was void for uncertainty of location.

(c) The Road Board of Bibb county is a body separate and distinct from the County Board of Commissioners, and has ministerial authority over the clearing and working of roads, but no authority for creating or establishing public roads.

(d) The order of the County Board of Commissioners seeking to establish the public road in question being void, the members of the Road Board could not be required to clear and work the same; and such being made to appear from the allegations of the original petition and amendments thereto, the court did not err in dismissing the petition for mandamus.

Submitted July 18,—Decided November 12, 1906.

Petition for mandamus.    Before Judge Felton.    Bibb superior court.    February 5, 1906.

John C. Green and T. B. West filed their petition for mandamus against the Road Board of Bibb county, to compel that body to establish and work a new public road, the contemplated location of which was described in an exhibit to the petition as follows: "A road commencing at the east end of 5th street bridge over the Ocmulgee river in the east Macon bridge district, and running then in a southeasterly direction past or through the lands of W. F. Anderson, Central City Brick Company, Mrs. M. A. Patterson, Monroe Tharpe, William Ellis, Edwards, and Slappey, and terminating at Nelson's mill." Before the filing of the petition for mandamus, T. B. West, one of the plaintiffs, and others, filed a petition to the County Board of Commissioners of Bibb county for the opening and establishment of a public road along the route hereinbefore described, to be 7,920 yards long, with a right of way 2 0 feet wide. This petition was referred by the County Board of Commissioners to Bond, Wray, and Massey, members of that body, with direction to investigate and report back to the board, and it was ordered that citation issue as required by law, to the end that all persons opposed to the establishment of the road might be heard. After the passage of this order, Commissioners Wray and Bond reported back to the County Board of Commissioners: "We have made such examination, and find that said described road will be of public utility; and we have measured, laid out, and marked said described road in conformity to law, adopting the length, width, and line of said road as described in said petition." After this report had been filed and citation had been issued and published, certain objections were filed to the establishment of the road, and the matter came on to be heard before the County Board of Commissioners; and that body rendered judgment as follows: "After due and careful consideration of both the petition and the objections thereto, there being no legal objection to the granting of said petition presented for the consideration of this board, it is therefore ordered that the above and foregoing petition of T. B. West et al. be and the same is hereby granted; and also ordered that said road be established as prayed for, and entered upon the register of public roads to be worked by the county road force." The Road Board is a separate body from the County Board of Commissioners. It was created by the act of 1871 (Acts 1871,

p. 221). The plaintiffs contended that upon the action of the County Board of Commissioners, hereinbefore stated, and by virtue of the mere direction contained in the order quoted, it became the duty of the Road Board to proceed with the physical work of opening the public road over the route indicated. The defendant urged, among other reasons why it should not be required to open and work the road, that the judgment of the county commissioners was void for want of a specific description of the location of the road, and that it was not the duty of the Road Board to proceed with the opening of the road, until its exact location was ascertained of record and certified to it by the County Board of Commissioners. It does not appear that before the filing of the petition for mandamus the contemplated road was more definitely located than hereinbefore recited. The plaintiffs amended the petition by alleging, among other things, that since the grant of the order establishing the proposed road, (a) "the Board of County Commissioners have built, and have now, one bridge, and repaired another bridge, and thereby adopted the same as a part of said road;" (b) "of said proposed road about three miles are now in actual daily use; sometimes the present road is on the actual line of the proposed road, and sometimes alongside and immediately near it;" (c) "a complete survey of said road has been made by the county surveyor of Bibb county, and a plat of the same made by said surveyor, he acting thus under the order of the said Board of County Commissioners;" (d) "said proposed road has been marked and pegged out, every chain, and was so marked out, and this marking adopted, when the said road commissioners examined and marked off and reported upon the same to the said Board of County Commissioners."

The defendants moved to dismiss the petition for mandamus, on the ground, among others, that, under its allegations, the plaintiffs were not entitled to the relief prayed for. The court sustained the motion, and the plaintiffs excepted.

*Thomas B. West* and *Hardeman & Moore,* for plaintiffs.

*John P. Ross,* for defendant.

ATKINSON, J. Under the provisions of subsection 3 of section 21 of the act of 1873 (Acts of 1873, p. 219), the County Board of Commissioners of Bibb county has exclusive jurisdiction over the subject-matter of establishing, altering, or abolishing all roads,

bridges, and ferries, in conformity to law. It follows from this that when it is desired to establish a new public road in Bibb county, it must be done under the authority and direction of that board. It may be of grave concern to the individual and to the public as to whether the public funds shall be expended, or how expended, in the laying out or establishing of public roads. In addition to this the public convenience and utility in the particular road are of the utmost importance. And the establishment of such road might call for the taking of private property and the exercise of the State's right of eminent domain, which ought never to be exercised except where necessary to the public service. Because of the importance of the subject-matter, particular formalities have been prescribed by law for the opening of new roads, and the responsibility for the proper exercise of authority has necessarily been charged to some one competent to subserve the public good. In Bibb county these matters have been primarily entrusted to the wisdom of the Board of County Commissioners. It is to this board that application was made for the establishment of the road in question, and it is to the judgment of this Board that we are to look in order to ascertain whether or not the Road Board has received direction such as in the exercise of its ministerial duties would authorize it to proceed with the clearing and working of the road sought to be established. Under the Political Code of 1895, § 520, it was the duty of the county commissioners, upon application for the new road, to appoint three road commissioners residing as near as possible to where such road was intended to pass, with instruction to examine; and if the three commissioners so appointed should find the road to be "of public utility," it was their duty to proceed to mark it out and report to the commissioners, under oath, that they had found it of public utility and had marked it out. Under the act of 1901 (Acts of 1901, p. 79), in order that the marking out of the road may be more accurate and that there may be a better record of the action of the commissioners marking out the road, the county commissioners are granted authority, "at their discretion, to employ at the county's expense the county surveyor, or some other competent civil engineer, who shall assist the special road commissioners appointed for the purpose of laying out and locating" the new road. After making provision for the exact location of the road by commissioners and a surveyor (if, in the

discretion of the county commissioners, the services of a surveyor should be necessary), it is prescribed by the Political Code, §521, that if the commissioners are willing to grant such road "they shall publish a citation for thirty days at the door of the court-house, and in a public gazette if there is one in the county, *giving a particular description of the new road.*" By §516 of the same code it is provided that the county commissioners "shall prepare and keep in their offices, open to the inspection of the public, a well-bound book, to be known as the 'Public road register,' in which they shall have entered a list of all the public roads and road districts in the county subject to be worked at the county expense. Said register shall correctly show the length, and define the width of each, together with a general description of every public road on said list; and shall also contain a plat of each road, whenever such plat may be necessary to clearly and accurately define its line. Said register shall be altered from time to time by said commissioners or ordinaries, as new roads are established, or old ones altered or discontinued. It shall be unlawful for the county authorities having charge of working the public roads of the county to work, directly or indirectly, any road or part of road that is not found on said register, or to continue to work any road or part of road after the same has been stricken from said register by said county commissioners or ordinaries."

Looking to the nature of the matter under consideration, and in view of the importance of intelligently exercising the discretion with which the county commissioners are clothed relative to granting or refusing the application for a new road, and in view of the register to be kept of the road when established, and in view of the further fact that the physical work of clearing and working the road must be done by others than the county commissioners, and in view of the statutes hereinbefore quoted, we are forced to the conclusion that before it can be said that the county commissioners have so established the road as to render it obligatory upon the part of the other county authorities to clear and work the same for use by the traveling public, there must be in the office of the county commissioners a record of the establishment by appropriate order, and the road must be described in that record with such particularity as that the same, when certified to the ministerial authorities, may be actually located from that record. Unless the

road be established of record with that degree of particularity, it could never be known whether or not the ministerial officers, in clearing the road, were confining themselves to the location actually intended by the county commissioners. While that body may appoint commissioners to locate the road, and may employ a surveyor where necessary in order to fix its exact location, authority, after all, to establish the road and locate it comes back to the county commissioners, and they could not delegate it to others. The law contemplates corporate action by the County Board of Commissioners after all reports by the special commissioners. It is alleged in the petition that the exact location "was pegged out by the commissioners," the three appointed by the county commissioners in the first instance, and surveyed by the county surveyor, but it does not appear that the "pegging out" process and surveying were ever in detail reported back to the county commissioners, and that they took corporate action thereon so as to make them matters of record in the office of the county commissioners. Nor was the location of the contemplated road otherwise so described in the application for the road or in the report by the viewing commissioners to the county commissioners, or so described of record with the county commissioners, as to make its location sufficiently definite to furnish directions to the ministerial officers as to where the work of clearing should be employed. A definite location was fixed by the record in each of the cases *Brown* v. *Sams,* 119 *Ga.* 22, and *Cotting* v. *Culpepper,* 79 *Ga.* 792. Under the view we take of the case, the order attempting to establish the road was void for the want of a sufficient description of the contemplated road.

An examination of the act creating the Road Board of Bibb county will show that it was not within the power of that board to locate public roads. This being true, the board could not be required to do the work which it is sought by the petition for mandamus to compel it to do. This appearing from the allegations made in the original petition and the amendments thereto, it was not erroneous for the court, on motion of counsel for the defendant, to dismiss the petition for mandamus.

*Judgment affirmed. Cross-bill dismissed. All the Justices concur except*

EVANS and LUMPKIN, JJ., dissenting. If the provisions of the Political Code contained in §§ 516-519 have been put in force in

Bibb county by the action of the grand jury of that county, as provided in § 519, and if this court shall take judicial cognizance of that fact (it not so appearing expressly in the record, but at most only by implication), yet we are of the opinion that the description of the road in the application and judgment meant a straight line between the given termini, and was sufficiently definite.