## BUCHANAN *v.* JAMES, commissioner, *et al.*

1. All public roads laid out by an order of the board of roads and revenue, or by the ordinary, pursuant to the Political Code, § 520 et seq., in the absence of anything indicating a lesser width, will be presumed prima facie to be at least thirty feet in width.

2. Where a public road, originally established as thirty feet in width, has been classified by the county and road commissioners as a second-class road, pursuant to the Political Code, §§ 511, 512, it may by a subsequent classification by them, be restored to its original width.

3. If, on an application for a public road, the road commissioners appointed to mark it out define the width, by locating the lateral lines of the road, and the road as defined by them is established by the county commissioners, the width of the road can not be increased simply by an order of classification.

4. Where the evidence was undisputed that the road through the plaintiff's premises was originally marked and laid out by the road commissioners, twenty feet in width, and that the county authorities were attempting to widen it so as to embrace land of the plaintiff without first acquiring, in the manner prescribed by law, the right to do so, the court erred

in refusing to enjoin the taking of a strip of the plaintiff's land so as to widen the road beyond the limits originally marked out.

Argued February 12,—Decided April 16, 1908.

Petition for injunction. Before Judge Worrill. Early superior court. August 3, 1907.

In 1887 the public road leading from Blakely to the Fort Gaines and Newton road at Liberty Hill church was duly established by the board of commissioners of roads and revenues of Early county. In 1894 certain citizens applied to them for an order allowing a change to be made in this road. On this application the board appointed three road commissioners to examine into the matter, and, if they found the change to be of public utility, to mark it out conformably to law, and make their report under oath. They duly made their report, and citation was issued in terms of the statute, and, at the January term, 1894, of the commissioners' court, the following order was passed: "Upon the report of the road commissioners appointed to change the public road now leading now running east from Blakely to Liberty Hill Church in said county, said change commencing at the original crossing at Dry Creek and to run south of the original road through the Camack lands, Wells lands, L. D. Gay lands, and through Dr. W. M. Standifer lands intersecting the old road where the lands of Dr. W. M. Standifer joins the lands of Dr. T. M. Howard, thereby abolishing that portion of the old road, will be of public utility. It is therefore ordered that said road be and is hereby changed and established as one of the public roads in said county, and it is further ordered that commissioners of the 866 dist. G. M. be furnished with a certified copy of this order and said commissioners are hereby ordered, directed, and required to have said road opened by the overseer and hands assigned to work said road." On June 7, 1898, the following order was passed by the board and entered upon their minutes: "The road commissioners of the several districts of the county met with the board of county commissioners, as was requested, to classify the road of the county, and upon motion of T. J. Lanier the following roads were designated as second class: Blakely and Bluffton, Blakely and Damascus, by Liberty Hill to the county line, Blakely and Cedar Springs, by Fort and Mims and Sowhatchie, Blakely and Colquitt, Arlington and Colquitt, Clowers place by Damascus to Miller county line, Blakely to Howard's Land-

ing. Balance of the roads in the county are designated as third class." At the February adjourned term, 1907, of the commissioners' court, the following order was passed: "Ordered, by the board of commissioners of roads and revenues of Early county, that on and after this date that all public roads of Early county shall be first-class roads and they are hereby declared to be the same, and any order heretofore passed by this board making any of the roads of this county second or third class roads is hereby rescinded. And the superintendent is ordered as early as practicable to put said roads thirty feet wide and in the condition of first-class roads." Pursuant to this order the road officer and the superintendent of roads were proceeding to widen the Damascus and Liberty Hill road, which traversed the lands of Mrs. W. A. Buchanan, by widening it approximately five feet on each side, so as to make the road what is known as a first-class road, thirty feet in width. In the process of widening the road, they were beginning to move the fences of the land of Mrs. Buchanan, when she applied to the court for an injunction to restrain them from carrying out the order of the board of commissioners by widening the road to thirty feet in width. On the interlocutory hearing the court refused an injunction, and the plaintiff excepted.

*Park & Collins* and *Pottle & Glessner,* for plaintiff.

*R. H. Sheffield;* for defendants..

EVANS, P. J. (After stating the facts.)

1. Our statute declares that all roads laid out for public use by an order of the ordinary are public roads. Polit. Code, §509. The point is raised as to the width of a public road established by order of the ordinary (or county commissioners where county matters are administered by a board of commissioners, as in the present case), when the order establishing the road does not specify any particular width. The act of 1799 declared that all public roads thereafter laid out should be cleared of all trees, stumps, grubs, and brush, at least twenty feet wide. Cobb's Dig. 944. This was subsequently amended by the act of 1818, which provided that all public roads should be cleared at least thirty feet wide. Cobb's Dig. 944. The act of 1799, as amended by the act of 1818, has been codified in the Political Code, §510. In 1870 the General Assembly passed an act entitled "An act to authorize the ordinaries and road commissioners of the several counties to

classify the public roads of the several counties," which is incorporated in the Political Code, §§ 511-512. These code sections provide that "the several ordinaries of this State, with the concurrence of a majority of the road commissioners of their respective counties, shall designate such public roads in their respective counties, as in their discretion should be so designated, as second-class roads." All roads so designated shall be cleared at least twenty feet. The purpose of the act of 1870 would seem to be to invest the ordinary and a majority of the road commissioners of a county with a discretion as to dividing all public roads into classes, so as to provide how much of a road of a particular class shall be cleared of all trees, stumps, grubs, and bushes, and not to narrow the width of any public road established pursuant to the order of the ordinary. The existing law provided for a discontinuance or alteration of an old road. Whether the contraction of the width of an old road be an alteration of it or a discontinuance of a longitudinal part of the road, it is not necessary now to decide. In either event, certain formalities had to be pursued before such result could be had. See Pol. Code §§ 520, 521, 522, 524. As appears from its title, the act of 1870 was not designed to amend the law then in force respecting the laying out of public roads on this alteration or discontinuance, but to confer upon the ordinary and road commissioners the power of classification to meet conditions which were likely to change from time to time. The travel over a road in a sparsely settled region might be so light that it would not require the road to be cleared thirty feet in width. If such a width was unnecessary to accommodate the travel, the county authorities were given the option of avoiding the expense of clearing the whole thirty feet at the time of laying out the road, or of working the whole width after the road was laid out, until the exigencies might require the full width of thirty feet. In pursuance of this policy, the General Assembly, in 1894, extended the power of classification, so as to allow some public roads to be designated as third-class roads, which were only to be cleared at least sixteen feet wide. Polit. Code, § 513. These code sections (Polit. Code, §§ 511-513) conferred a discretionary power on the ordinary and the road commissioners, and there is nothing to indicate that the power of classification was exhausted upon a single exercise of discretion, and that the classification when once made.

prevented a reclassification so as to put a second-class road into the first class, or a third-class road into the second or first class. We judicially know that when Georgia was formed into a State her population was sparse, and there has been a continuing growth to the present time. In anticipation of the development of the country, and of an increase in population, the county authorities were given the power to adjust the highways to the constantly changing conditions. The establishment of a new road or a shifting of the population might decrease the travel on a first-class road, so as to justify its classification as a second-class road. On the other hand, the travel over a road which had been designated as second or third class might from many causes be so largely increased as to demand a wider road-bed, and the transfer of the road to a higher class. If the designation of a public road as second-class or third-class irretrievably transferred the road from a higher to a lower class, then it would not be possible to widen the road without going through the procedure provided for the alteration of a road,—condemning or buying the easement which once belonged to the public. Such a result would so retard the growth of the county, and inconvenience its citizens, that we can not believe such an effect was intended by the legislature. We therefore conclude that when a road is laid out under an order of the ordinary (or county commissioners as the case may be) and there is nothing to indicate the contrary, the width of the road so laid out is prima facie presumed to be the standard road described in the Political Code, § 510, of a minimum width of thirty feet.

2. It is within the power of the county authorities to originally lay out a public road of any specified width, not less than 16 feet, under the Political Code, § 520. In laying out a road, the statute requires that the road commissioners appointed to judge of its public utility shall mark it out, and the road thus marked out is the road established. And in the absence of countervailing facts, the presumption is that the highway officers have obeyed the law, and have laid out a road of the required width. It has been held that where the statute fixes the width of a road, a line surveyed and described as a center line of the road will give its dimensions with sufficient accuracy to justify the ministerial officers in opening it up for travel. The reason for this rule is apparent; for if the statute fixes the width, there can be no difficulty in ascertaining

the outer limits of the road.  Elliott on Roads and Streets, §382; *Brown* v. *Sams*, 119 *Ga.* 22 (45 S. E. 719).  If the officers clothed with the duty of marking out a new road in fact mark the outer dimensions of the road, with the intent of defining its exact width, the dimensions of the road can not be extended beyond the limits thus defined, and the order of the county commissioners adopting their report and establishing the public road as marked out by them will be construed as establishing the road as defined by the road commissioners.  But if the road commissioners in marking out the road indicated only the thread or center of the road, then the order establishing such road will be held to mean that the public road marked out in this way shall be thirty feet in width, i. e. fifteen feet from the center, unless some other width is specified. The question before the court in *Green* v. *Road Board of Bibb County*, 126 *Ga.* 693 (56 S. E. 59), was not as to the width of a road, but as to the certainty in the description of its location.

4.  Mrs. Buchanan offered testimony that the road as actually marked and laid out through her premises by the highway officers in 1894 was twenty feet in width.  This evidence was not contradicted by the county officials.  The only testimony offered by them was to the effect, that a certain witness, who testified in their behalf, represented another landowner in the assessment of damages, and that he "had no understanding the county was getting less than thirty feet, his understanding being that they were opening and laying out a road through this section of the full width of roads, and there was no agreement of any sort that the road right of way was to be only twenty feet in width."  This testimony is perfectly consistent with that of the plaintiff.  If the road commissioners marked out a road twenty feet wide through the plaintiff's premises, then the width of the road as defined by the road commissioners at this particular point was its width as established by the order of the county commissioners; and, as has already been observed, the outer dimensions can not be extended by an order classifying the road as a first-class road.  The county had no right to appropriate the plaintiff's land without first acquiring a right thereto in the manner provided by law; and if in the exercise of its corporate powers it caused its officers and agents to go upon the land, and proceeded to tear down the fence of the plaintiff and extend the width of the road so as to include a por-

tion of the plaintiff's land, it committed a trespass. *Terrell County* v. *York,* 127 *Ga.* 166 (56 S. E. 309). It is more than an ordinary transient trespass; it is an actual taking of the plaintiff's property without first making adequate compensation. Since the constitution of 1877, the decisions of this court have been uniform that equity will enjoin the appropriation of the land of an individual to a public use, until the landowner is either paid or tendered the just value of the property taken. *Chambers* v. *Cin. & Ga. R.,* 69 *Ga.* 320; *Town of Poulan* v. *Atlantic R. Co.,* 123 *Ga.* 605 (51 S. E. 657). The court therefore erred in refusing to enjoin the appropriation of the plaintiff's land until the road had been widened in the manner pointed out by the statute, so as to include the land of the plaintiff, sought to be appropriated by the county.

*Judgment reversed. All the Justices concur, Atkinson, J. specially.*

ATKINSON, J. I concur in the judgment in this case, but not in the first headnote or in what is said in the corresponding division of the opinion.