**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: December 19, 2023

S23G0169. SUMTER COUNTY et al. v. MORRIS et al.

WARREN, Justice.

Property owners and residents of the Statham Lakefront Subdivision seek to require Sumter County to repair roads in their subdivision. The trial court held that the County has no obligation to maintain the roads, but the Court of Appeals vacated that order and remanded the case for the trial court to determine whether there was evidence of "recognition of the streets as public streets or acceptance of the dedication by the public." This Court granted Sumter County's petition for certiorari.[1]

Adhering to precedent from this Court, which holds that a county is not obligated to repair and maintain a road if county authorities have not accepted the land owner's offer to dedicate the

---

[1] The case was orally argued in this Court on September 19, 2023.

road to public use, we conclude that the Court of Appeals erred by remanding this case for the trial court to consider whether the public accepted the road as a public road, and we reverse that portion of the judgment. And because of ambiguity in the Court of Appeals's decision, we remand the case for the Court of Appeals to clearly rule on whether the trial court was correct to conclude that Sumter County authorities did not impliedly accept the roads as public roads.

1. On November 16, 2020, John Morris and 29 other people (collectively, "the plaintiffs") who were residents of or owned property on Statham Lakefront Road, East Entrekin Road, West Entrekin Road, and Selma Lane in the Statham Lakefront subdivision in Sumter County (collectively, "the Subdivision Roads") sued Sumter County and its Board of Commissioners,[2] asking for a

---

[2] In naming the Board of Commissioners as a defendant, the plaintiffs named the individual members of the Board, but do not appear to have sued them in their individual capacities. The plaintiffs' original complaint named the defendants as "SUMTER COUNTY, GEORGIA and its governing body, THE BOARD OF COMMISSIONERS OF SUMTER COUNTY, GEORGIA, consisting of its duly elected Members, namely, CLAY JONES, SCOTT

writ of mandamus under OCGA § 9-6-21 (b) to require Sumter County to repair the Subdivision Roads and for a declaratory judgment "declaring that [the Subdivision Roads] are public roads of Sumter County, Georgia and that the Defendants have an official duty to repair and maintain each of them."[3]

At a hearing in June 2021, evidence was presented showing that the Subdivision Roads had been open to the public since their creation. In 2010, Sumter County signed an easement agreement with the Statham Lakefront subdivision homeowner's association that gave the County an easement on one of the Subdivision Roads "for the sole purpose" of road maintenance. The County conducted maintenance on the Subdivision Roads from at least 2010 until 2019, including resurfacing the roads in 2015 and 2017 as part of larger county projects that were paid for with some funds that can

ROBERSON, GEORGE TOBERT, MARK WADDELL & THOMAS JORDAN. In their amended complaint, the plaintiffs replaced Tobert and Jordan with William Reid and Jessie Smith to "reflect[] the current membership" of the Board of Commissioners.

[3] The plaintiffs also requested attorney fees and later amended their complaint to add a request for damages. These claims were not expressly addressed in the trial court order and are not at issue here.

3

be used on non-county roads and some funds that can be used only on county roads. Conflicting evidence was presented as to whether any county-road-only funds were used on the Subdivision Roads. Subdivision residents also sometimes conducted maintenance on the roads. There was no evidence presented that the Subdivision Roads had ever been expressly accepted as county roads at a meeting of the Sumter County Board of County Commissioners, but evidence was presented that the roads were discussed twice at Board meetings, and that the Board chose not to accept them.

(a) *The Trial Court Order*

In September 2021, the trial court issued an order denying the plaintiffs' motion for mandamus and declaring that "(1) Sumter County is not the owner of the Subdivision Roads, and (2) neither Sumter County nor the Board is required to maintain or repair the Subdivision Roads." The court found that "the Board did not accept any offer to dedicate the Subdivision Roads to Sumter County" and instead "consistently rejected offers to dedicate the Subdivision Roads to public use."

4

The trial court then held that "the fact that the public may have used the Subdivision Roads does not result in Sumter County becoming responsible for the maintenance and repair of these roads." The court also recognized that Sumter County had performed maintenance on the Subdivision Roads but found that no county-road-only funds were spent to maintain the Subdivision Roads, that the County's "work was authorized" by an easement, and that subdivision residents "also performed work on the Subdivision Roads." The court concluded that because Sumter County did not exercise "exclusive" "dominion and control" over the Subdivision Roads, "the work Sumter County performed on the Subdivision Roads does not establish an implied acceptance of an offer to dedicate those roads."

(b) *The Court of Appeals Opinion*

The plaintiffs appealed the trial court's order to the Court of Appeals. The Court of Appeals agreed with the trial court's finding that Sumter County "never expressly accepted any offer to dedicate the roads," but explained that "lack of express acceptance is not

5

controlling" because "acceptance of a dedication may be implied." *Morris v. Sumter County*, 365 Ga. App. 323, 327, 327-328 (878 SE2d 81) (2022). The court further explained that an offer to dedicate may be accepted "'by the appropriate public authorities or *by the general public*.'" Id. at 328 (quoting *Kaplan v. City of Sandy Springs*, 286 Ga. 559, 560 (690 SE2d 395) (2010), with emphasis added). The Court of Appeals held that the trial court erred by concluding that the plaintiffs were "obligated to demonstrate that *the Board* had accepted dedication," stating: "the trial court misconstrued the case law and disregarded the common-law provision that dedication could be accepted not only by the Board but also by recognition of the road as a public road by the public." *Morris*, 365 Ga. App. at 329 (emphasis in original).

The Court of Appeals did not expressly address the trial court's holding that Sumter County did not impliedly accept the dedication of the Subdivision Roads, but held that the trial court should, on remand, consider the "evidence that the County maintained the roads, using public funds, between 2010 and 2019" in deciding

6

whether the dedication of the road "had been accepted by the general public or whether there was evidence of recognition of the streets as public." Id. at 329. In light of this analysis, the Court of Appeals vacated the trial court's decision and "remand[ed] the case for the trial court to consider whether there was evidence of recognition of the streets as public streets or acceptance of the dedication by the public." Id.

(c) *Sumter County's Petition for Certiorari*

Sumter County petitioned for a writ of certiorari from this Court, and we granted the petition, posing the following question:

> Whether the dedication of land by the owner for use as a public road and use by the public of such road, but without express or implied acceptance by the county authorities having jurisdiction over roads, obligates the county to repair and maintain the road.

\*

As explained more below, we reaffirm our precedent that a county is not obligated to repair and maintain a road offered for public use by the owner unless the appropriate county authorities have expressly or impliedly accepted the dedication of the roads as

7

public roads.  Thus, the Court of Appeals erred in remanding this case for the trial court to consider whether the general public accepted the dedication of the Subdivision Roads as public.

We do not know, however, whether the Court of Appeals's direction to the trial court to consider "evidence of recognition of the streets as public streets" is meant to direct the trial court to consider the *County*'s recognition—meaning implied acceptance—of the streets as public, or to consider the *general public*'s recognition. Thus, we remand for the Court of Appeals to clarify this ambiguity by clearly addressing the trial court's holding that Sumter County did not impliedly accept the Subdivision Roads.

We begin our discussion with the question posed in granting Sumter County's petition for certiorari, which this Court's precedent, properly understood, resolves.  We then consider and reject the plaintiffs' attempts to circumvent this precedent and instead rely on inapplicable statutes and cases.  Finally, we address the ambiguity in the Court of Appeals's opinion and the issue the Court of Appeals should decide on remand.

2. The question posed in this case is whether the public's use of otherwise privately owned roads can obligate a county to maintain those roads when, as with the Subdivision Roads here, the private owner has offered to dedicate the roads to the public, but there has been no acceptance of the roads by the appropriate county authorities.[4] As this Court explained in *Penick v. Morgan County*, 131 Ga. 385 (62 SE 300) (1908), a road can become a public road that the county has control over and responsibility for if county authorities accept an offer from the land owner to dedicate the road to the public. See 131 Ga. at 389 ("If the owner of land dedicates land for use as a public road, the county authorities can, in their discretion, accept it for a public road and open a public road over it.").[5] If county authorities accept the dedication of a public road,

---

[4] The Court of Appeals noted and rejected Sumter County's contention that there was no offer to dedicate one of the Subdivision Roads. See *Morris*, 365 Ga. App. at 327. On appeal, Sumter County does not dispute this holding.

[5] The language of "dedication" of roads or land to the public is used both in discussing when a county is obligated to repair and maintain a road (the issue in dispute here) and discussing when a private owner is estopped from reclaiming land from public use, but the requirements in these two situations are different. See *Penick*, 131 Ga. at 391. However, this Court and the Court

9

the county generally has an obligation to repair and maintain the road, and that obligation can be enforced by mandamus. See *Ross v. Hall County Board of Commissioners*, 235 Ga. 309, 313 (219 SE2d 380) (1975) (holding that the petitioners were entitled to mandamus under the materially identical predecessor to OCGA § 9-6-21 where "[t]he uncontroverted facts of this case clearly and unequivocally established as a matter of law both express dedication of the roads to the public use by the developers of the Mountain View Lake Estates subdivision, and implied acceptance by the county commissioners"). See also OCGA § 9-6-21 (b) (providing for citizens of a county to apply "against the county board of commissioners" for a "writ of mandamus against the parties having charge of and supervision over the public roads of the county" to compel "the building, repairing, and working of the public roads . . . up to the

of Appeals have at times conflated the two situations, see, e.g., *Kaplan*, 286 Ga. at 560, which appears to have led the Court of Appeals astray in this case. As discussed further in Division 3 (a) below, we disapprove any such conflation, and to decide this case, we apply the requirements for determining when a county is obligated to repair and maintain a road that has been dedicated to public use.

standard required by law, so that ordinary loads, with ordinary ease and facility, can be continuously hauled over such public roads.").[6]

Repairing and maintaining a public road places a significant burden on counties, and this Court has explained that a mere offer of the road to the public or use of the road by the public does not suffice to impose this burden; county authorities must choose to accept a dedication to take on the burden of maintaining the road. As *Penick* explained:

> The existence of a public road carries with it burdens on the county of working it and keeping it in repair, and these burdens could not be imposed on the county simply by an individual dedicating his land for use as a public road, and by the public using the road for travel. Before a road can become a public road, there must at least be some recognition of it as a public road by the county authorities having jurisdiction over roads.

*Penick*, 131 Ga. at 391 (citations omitted). See also *Ga. R. & B. Co.*

---

[6] This provision specifically providing the ability to mandamus counties to repair roads was added in 1903 to the precursor of OCGA § 9-6-21. See Ga. Laws 1903, p. 41. However, this Court has held that OCGA § 9-6-21 (b) is not "the exclusive authority under which a party can seek a writ of mandamus for road maintenance against a county board of commissioners." See *Burke County v. Askin*, 291 Ga. 697, 699 (732 SE2d 416) (2012) (holding that the trial court "did not err in addressing the petition for writ of mandamus under OCGA § 9-6-20," the general mandamus statute).

*v. Atlanta,* 118 Ga. 486, 489 (45 SE 256) (1903) ("Streets are not an unqualified benefit to a municipality; they impose responsibilities, and the acceptance should be by some explicit act on the part of the authorities, and not by vague, indefinite, and inconclusive actions on the part of a body of citizens loosely called the 'public.'") (citation omitted); *Kelsoe v. Town of Oglethorpe,* 120 Ga. 951, 953 (48 SE 366) (1904) ("Before there can be a dedication to a municipality of a tract of land laid out by the owner as a street to be used by the public, the municipality must express its assent to the dedication by acceptance. A private individual can not, by laying out streets through his land, impose upon a municipality the burden of maintaining the same for the use of the public; it has a right either to accept or reject the proffered dedication."). The county authorities' acceptance of the road "may be express or implied as long as a clear intent is manifested." *Ross*, 235 Ga. at 310. See also *Chatham Motorcycle Club, Inc. v. Blount*, 214 Ga. 770, 773 (107 SE2d 806) (1959) ("This court is definitely committed to the proposition that, to complete the dedication of land by the owner to

12

the public use as a street, road, or highway so as to make the county or city or other political subdivision involved responsible for its upkeep and maintenance, there must be acceptance of the dedication by the proper public authorities, either express or implied.").

The cases cited above clearly answer the question we posed in granting certiorari: public acceptance of a road alone does *not* obligate a county to repair and maintain a road that has been offered for public use; there must be some acceptance, either express or implied, by county authorities to obligate the county to repair and maintain a road.[7]

3. The plaintiffs argue that we should not follow *Penick* and its

---

[7] This should not be construed as a holding that public use of a road can never be considered as part of determining whether county authorities have accepted a road as a public road. See *Penick*, 131 Ga. at 390-391 ("The order of the county authorities adopting the favorable report of the committee appointed by them to investigate the question whether or not the road should be opened and made a public road, the working of the road and the building of the bridge on it by the county authorities, and the use of it by the public since it was first laid out, constituted sufficient proof to make it proper that the court should leave to a jury the question as to whether or not there had been an acceptance of the dedication by the proper county authorities, if the land was offered as a dedication.").

progeny and should look instead to statutes and cases that address different factual scenarios to conclude that mere public use of a road that has been offered to the public by its private owner can obligate the county to care for that road. Specifically, the plaintiffs point to (1) OCGA § 44-5-230 and related cases, some of which expressly apply § 44-5-230 and some of which do not cite the statute but apply the same principle, saying that the dedication of a road to the public can be completed by the general public accepting the road, and (2) portions of OCGA § 32-1-3 defining "dedication" and "public road" in a way that does not require acceptance by county authorities. These statutes and cases, however, address questions not at issue in *Penick* or in this case. Specifically, OCGA § 44-5-230 sets forth a private owner's rights with regard to a road, and the definitions in OCGA § 32-1-3 apply in Title 32 (and not Title 9, where the mandamus statutes are found). Title 32 provides requirements for county maintenance of the roads a county has made a part of its "county road system." Thus, the plaintiffs'—and the Court of Appeals's—reliance on this law is misplaced.

14

(a) *OCGA § 44-5-230 and related cases*

OCGA § 44-5-230 says:

> After an owner dedicates land to public use either expressly or by his actions and the land is used by the public for such a length of time that accommodation of the public or private rights may be materially affected by interruption of the right to use such land, the owner may not afterwards appropriate the land to private purposes.

This statute and its predecessors have been cited in cases about land owners' rights to land that has been dedicated to public use, and—following the statute—those cases have indicated that the dedication of land to the public can be complete if the public accepts the dedication. See, e.g., *Smith v. State*, 248 Ga. 154, 158 (282 SE2d 76) (1981) (citing Code § 85-410, a predecessor to OCGA § 44-5-230, and explaining that "[t]o prove a dedication of land to public use, there must be an offer, either express or implied, by the owner of the land, and an acceptance, either express or implied, by the appropriate public authorities or by the general public"); *Carroll v. DeKalb County*, 216 Ga. 663, 666 (119 SE2d 258) (1961) (citing Code § 85-410, and explaining that "[t]he essentials of dedication to public

15

use are an offer, either express or implied, by the owner and an acceptance, either express or implied, of the use of the land by the public or public authorities"). Other cases not citing OCGA § 44-5-230, but still addressing a private owner's rights, have framed the requirements of dedication of public property in a similar manner. See, e.g., *MDC Blackshear, LLC v. Littell*, 273 Ga. 169, 170 (537 SE2d 356) (2000) (considering a private owner's right to bar public access to an alley and explaining that "[a] public dedication requires an offer, either express or implied, by the grantor, and an acceptance, either express or implied, by the public"); *Chandler v. Robinson*, 269 Ga. 881, 882 (506 SE2d 121) (1998) (considering private owners' rights to bar access to a road on their property and explaining that "[t]wo criteria must be established in order to show that property has been dedicated: (1) the owner's intention to dedicate the land for public use, and (2) the public's acceptance of the dedicated property");[8] *Lines v. State*, 245 Ga. 390, 396 (264 SE2d

_____

[8] We note that although the issue in *Chandler* was whether the Robinsons could prevent the Chandlers from using a road on the Robinsons'

16

891) (1980) (addressing the rights of private owners to land that had been used by the public and explaining that "[t]wo essential elements for the dedication of land for public use are intention by the owner to dedicate and an acceptance by the public of the land for public use for which it is offered").

Although the concept of "dedication" of roads to the public is common to both the situation at issue in this case (i.e., determining when a county is obligated to repair and maintain a road) and the situation addressed in OCGA § 44-5-230 and related cases, the dedication contemplated in § 44-5-230 and related cases affects a private owner's rights—specifically what estops a private land owner from re-asserting private control of land she has offered for public use—and does *not* address when the dedication of a road to the public is sufficient to impose an obligation on a county to repair and maintain the road. And this Court has made it clear that a

property, the case was framed as deciding whether "the roadway was acquired by the county." *Chandler*, 269 Ga. at 882. This Court ultimately concluded that there had been no offer to dedicate the land to public use, 269 Ga. at 883. To the extent *Chandler* can be read to indicate that public use alone can transfer ownership of a road to a county, we disapprove such a reading.

17

county is not obligated to repair and maintain a road simply because public use has prevented a private owner from reclaiming the road for private purposes. *Penick* explained:

> Under Civ. Code 1895, § 3591 [a predecessor to OCGA § 44-5-230], if an owner of land expressly or by his acts makes a dedication of it for public use as a public road, and the property is so used for such a length of time that the public accommodations or private rights may be materially affected by an interruption of the enjoyment, such owner cannot afterwards appropriate it for private purposes. *However*, the dedication of land by the owner thereof for use as a public road, and use by the public of such road as a route of travel, would not of itself make the road a public road so as to charge the county with the burden of its repair and maintenance, unless the dedication was accepted by the county authorities having jurisdiction over roads, or there was evidence of their recognition of the road as a public road showing acceptance.

*Penick*, 131 Ga. at 391 (emphasis added). Similarly, in *Chatham Motorcycle Club*, this Court differentiated between what is necessary "to complete the dedication of land by the owner to the public use as a street, road, or highway so as to make the county or city or other political subdivision involved responsible for its upkeep and maintenance, [for which] there must be acceptance of the

18

dedication by the proper public authorities, either express or implied," from what is necessary to complete a dedication so that "the law considers it in the nature of an *estoppel in pais*, which precludes the original owner from revoking [the dedication]," for which "acceptance by the public by public use is sufficient to complete the dedication without acceptance by the public authorities of the county." *Chatham Motorcycle Club*, 214 Ga. at 774-775.

As *Penick* and *Chatham Motorcycle Club* explain, county acceptance is necessary in obligating a county to maintain land that was privately owned and offered for public use; the mere public use of the road does not create the obligation. However, we acknowledge that the analysis that determines a county's obligation to maintain land is similar in some respects to the analysis of whether a private landowner's offer of public use can estop that landowner from revoking a public dedication,[9] and that this Court has not always

---

[9] For example, as *Smith* and *Carroll* indicate, a county's acceptance of an owner's offer to dedicate the road to the public may also be a relevant consideration in deciding whether an owner may reclaim full control of land. See *Smith*, 248 Ga. at 158; *Carroll*, 216 Ga. at 666. But whereas county

been precise in explaining or observing the difference between what affects the private owner's rights and what affects the county's obligations. In particular, in *Kaplan*, this Court improperly cited cases addressing private owners' rights to land offered to the public in a case dealing with a county's obligation to repair a pipe. See *Kaplan*, 286 Ga. at 560 (citing *Smith* and *MDC Blackshear* and stating: "To prove a dedication of land to public use, there must be an offer, either express or implied, by the owner of the land, and an acceptance, either express or implied, by the appropriate public authorities *or by the general public*.") (emphasis added). However, notwithstanding its reference to acceptance by the general public, *Kaplan* then properly considered only whether *the county* had expressly or impliedly accepted the public dedication. See 286 Ga. at 561-562. Thus, *Kaplan* appears to have properly applied the law, and we disapprove any reading of it that would suggest that acceptance by the general public of an offer to dedicate land to the

---

acceptance is necessary to obligate a county to repair and maintain a road, county acceptance is not *required* before an owner's rights to restrict use of the property are affected.

20

public can obligate a county in the absence of the county authorities' acceptance of that offer.[10]

*Kaplan* seems to have been at least partly responsible for the Court of Appeals's error in this case because the Court of Appeals cited *Kaplan* to conclude that "an offer to dedicate may be accepted 'by the appropriate public authorities *or by the general public*.'" *Morris*, 365 Ga. App. at 328 (emphasis in original). For the reasons discussed above, this was error, and we reject the plaintiffs' contention that we should apply law addressing when a dedication of land to the public affects a private owner's rights in a case like

---

[10] We made a similar misstatement in the municipal context in *Hale v. City of Statham*, 269 Ga. 817 (504 SE2d 691) (1998), when, in a case dealing with whether a city had acquired ownership over an alley, we said: "Two criteria must be met before a public alley comes into existence by dedication: 1) the owner's intention to dedicate the property to public use, and 2) the public's acceptance of the property for that use." Id. at 818. Like the *Kaplan* Court, however, *Hale* then correctly considered whether "the city accepted the alley." 269 Ga. at 818. We therefore disapprove any reading of that misstatement in *Hale* in the same way we disapprove the reading of *Kaplan*.

We similarly disapprove *Rouse v. City of Atlanta*, 353 Ga. App. 542 (839 SE2d 8) (2020), which the Court of Appeals cited here, which considered a city's claim that land had been dedicated to the city and cited *Kaplan* to explain: "To prove a dedication of land to public use, there must be an offer, either express or implied, by the owner of the land, and an acceptance, either express or implied, by the appropriate public authorities or by the general public." *Rouse*, 353 Ga. App. at 544.

21

this one, which concerns a county's obligation.

(b) *OCGA § 32-1-3*

The plaintiffs also argue that we should conclude that Sumter County has an obligation to repair and maintain the Subdivision Roads because the roads have been "dedicated" as "public roads" as those terms are defined in OCGA § 32-1-3 (8) and (24). The Court of Appeals also cited these definitions in its analysis. See *Morris*, 365 Ga. App. at 326 n.13. Reliance on these definitions, however, is inappropriate because OCGA § 32-1-3 applies only to Title 32 and nothing in Title 32 obligates a county to repair and maintain "dedicated" "public roads" as defined in § 32-1-3.

Title 32, the "Georgia Code of Public Transportation," "provide[s] a code of statutes for the public roads and other transportation facilities of the state, the counties, and municipalities of Georgia." OCGA § 32-1-2. Within Title 32, OCGA § 32-1-3 (8) defines "dedication" as "the donation by the owner, either expressly or impliedly, and acceptance by the public of property for public road purposes, in accordance with statutory or common-law

22

provisions," and OCGA § 32-1-3 (24) defines "public road" as "a highway, road, street, avenue, toll road, tollway, drive, detour, or other way that either is open to the public or has been acquired as right of way, and is intended to be used for enjoyment by the public and for the passage of vehicles in any county or municipality of Georgia[.]" The plaintiffs argue that these definitions do not require acceptance by the county authorities and therefore the Subdivision Roads have been "dedicated" and are "public roads."

The problem for the plaintiffs' argument is that even if the Subdivision Roads are "dedicated" "public roads" under OCGA § 32-1-3—an issue on which we express no opinion—the first sentence of that statute expressly says that the definitions provided in this statute apply to the words "[a]s used in this title," i.e., Title 32. And nothing in Title 32 obligates a county to repair and maintain any and all roads that have been "dedicated" and are "public roads." Instead, OCGA § 32-4-41 (1) establishes that the county has a duty to maintain roads within its "county road system": "A county shall plan, designate, improve, manage, control, construct, and maintain

23

an adequate county road system and shall have control of and responsibility for all construction, maintenance, or other work related to the county road system." And OCGA § 32-4-40 provides that roads are made part of the "county road system" by county resolution: "Each county shall, by resolution, designate roads to be a part of its county road system; and such resolutions shall be recorded in the minutes of the county." See also OCGA § 32-4-1 (2) ("Each county road system shall consist of those public roads within that county, including county roads extending into any municipality within the county, which are shown to be part of that county road system by the department records on July 1, 1973, and any subsequent additions to such county road system *made by the county*.") (emphasis added).

Thus, a *county* can make roads part of the "county road system," and the county would then be obligated to maintain those roads under OCGA § 32-4-41 (1). These statutes do not, however, support the plaintiffs' assertion that mere public use can obligate a county to repair and maintain a road. In OCGA §§ 32-4-1 (2), 32-4-

40, and 32-4-41, like in *Penick*, county action is required.[11]

Accordingly, none of the provisions in Title 32 cited by the plaintiffs or the Court of Appeals obligate Sumter County to repair and maintain the Subdivision Roads if Sumter County has not accepted

---

[11] Part of the plaintiffs' analytical error seems to be based on their belief that if a road can be defined as a "public road" in any context or any sense of the phrase, the county has an obligation to repair and maintain it. That is not so. In support of their argument in this regard, the plaintiffs cite *Chatham County v. Allen*, 261 Ga. 177 (402 SE2d 718) (1991), in which this Court appears to have lacked precision in its discussion of the county's obligation to care for public roads. First, the Court spoke too broadly when it said, without explaining what it meant by "public road," that "[t]here can be no question, as Allen argues, that the county is obligated to maintain public roads." Id. at 177. As explained above, this statement is true in some contexts, such as when a county has accepted the dedication of a public road, but it is not true in all contexts. Second, in defining "public roads within the meaning of OCGA § 9-6-21 (b)," *Chatham County* cited the definition of "public road" provided in OCGA § 32-1-3 (24), without explaining why relying on this definition was appropriate. *Chatham County*, 261 Ga. at 177.

Notably, however, *Chatham County* dealt with a different issue than the one presented here. The question in *Chatham County* was whether a county was obligated to care for "unopened, undeveloped, proposed roads," and the Court concluded that because the roads were not open to the public, the county was not obligated to "open or maintain them." Id. at 719. Here, by contrast, there is no dispute that the Subdivision Roads were open to the public. Thus, *Chatham County* does not control, and we need not, and do not, decide whether it was correctly decided. To the extent *Chatham County* can be read to indicate that a county must care for any "public road"—in any sense of that term—we disapprove that reading, and we also decline to extend the opinion's unreasoned importation of OCGA § 32-1-3 (24) to the facts presented in this case.

25

their dedication as public roads. [12]

\*

Having concluded that our precedent answers the question posed in the grant of certiorari in the negative—that is, that public acceptance of a road will *not* obligate a county to repair and maintain the road in the absence of express or implied acceptance from the county authorities—and that the plaintiffs have not provided a compelling reason to deviate from that precedent, we reverse the Court of Appeals's judgment remanding the case for the trial court to consider the public's acceptance of the dedication of the Subdivision Roads.

4. We must remand the case to the Court of Appeals, however, due to an ambiguity in the Court of Appeals's instruction to the trial

---

[12] Sumter County argued in the Court of Appeals that it had no obligation to repair or maintain the Subdivision Roads because they had not been made a part of the "county road system" by county resolution, citing OCGA § 32-4-40. The Court of Appeals rejected that argument, explaining: "Because a road may be dedicated to a county by implication, a lack of express designation cannot be determinative of whether a road is 'public' for purposes of the county's maintenance responsibilities pursuant to the general and specific mandamus statutes." *Morris*, 365 Ga. App. at 331. Sumter County does not challenge that conclusion or argue that Title 32 has superseded our cases providing that a county's acceptance may be implied.

court to consider whether there was evidence of "recognition of the streets as public streets."

As described above, in its opinion, the Court of Appeals agreed with the trial court that "the County did not expressly accept any offer to dedicate the roads" but explained that "acceptance of a dedication may be implied" and then concluded that the trial court "failed to consider" whether the "evidence that the County maintained the roads, using public funds, between 2010 and 2019" "established that dedication had been accepted by the general public or *whether there was evidence of recognition of the streets as public, as permitted by common-law provisions.*"  365 Ga. App. 323, 327-329 (emphasis added).  This italicized phrase could be read to address either the general public's recognition, or the county authorities' recognition.

Notably, the Court of Appeals's discussion about the County maintaining the roads appears to focus on the *County's* actions. Moreover, in *Penick*—which, as discussed above, clearly established that county authorities must accept the dedication of a public road

27

in order to be obligated to repair and maintain it—this Court used wording similar to the italicized phrase the Court of Appeals used in this case to refer to the recognition of roads as public roads by the county, thus signifying implied acceptance by the county authorities. See *Penick*, 131 Ga. at 391 ("[T]he dedication of land by the owner thereof for use as a public road, and use by the public of such road as a route of travel, would not of itself make the road a public road so as to charge the county with the burden of its repair and maintenance, unless the dedication was accepted by the county authorities having jurisdiction over roads, or there was *evidence of their recognition of the road as a public road showing acceptance*.") (emphasis added). See also *Savannah Beach, Tybee Island v. Drane*, 205 Ga. 14, 14 (52 SE2d 439) (1949) (citing *Penick* and explaining that "[d]edication and use by the public would not of themselves make a street a public street so as to charge the municipality with the burden of repairs and maintenance and liability for injuries sustained by reason of the defective condition of the street, unless the dedication is accepted by the proper municipal authorities or

there is *evidence of recognition of the street as a public street*")
(emphasis added).

If the Court of Appeals, by using the italicized phrase in
*Morris*, meant to signify recognition *by the public*, then this decision
was erroneous for the reasons discussed above. If, however, the
Court of Appeals meant recognition *by the county authorities*—and
therefore implied acceptance by the county authorities—that
presents a different question. See, e.g., *Ross*, 235 Ga. at 310
(explaining that implied acceptance by county authorities can
obligate the county to repair and maintain a road).[13] Because we
cannot discern whether the Court of Appeals reviewed the trial
court's finding that the County did not impliedly accept the
dedication of the Subdivision Roads, we remand the case for the

---

[13] As described above, the trial court *did* expressly consider and reject
the argument that Sumter County impliedly accepted the Subdivision Roads,
including expressly considering evidence that the County expended funds and
performed maintenance on the Subdivision Roads. We express no opinion on
the correctness of the trial court's conclusion that Sumter County did not
impliedly accept the Subdivision Roads as public roads, as it is outside the
scope of the question we posed in granting the writ of certiorari. See *Coe v.
Proskauer Rose, LLP*, 314 Ga. 519, 530 (878 SE2d 235) (2022) ("[B]ecause this
issue is outside the scope of the questions posed in granting certiorari, we
decline to address it.").

Court of Appeals to consider and expressly decide this issue in a manner consistent with this opinion.

*Judgment reversed in part, and case remanded with direction. All the Justices concur.*