**THIRD DIVISION**
**DOYLE, P. J.,**
**WATKINS and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 22, 2024**

# In the Court of Appeals of Georgia

A22A0826. MORRIS et al. v. SUMTER COUNTY et al.

WATKINS, Judge.

Property owners and residents (the "residents") of the Statham Lakefront Subdivision filed a petition for writ of mandamus and declaratory judgment against Sumter County (the "County"), seeking to require the County to repair the roads in their subdivision. The trial court ruled that the County had no obligation to repair the roads, and the residents appealed. In *Morris I*, we vacated the trial court's decision and "remand[ed] the case for the trial court to consider whether there was evidence of recognition of the streets as public streets or acceptance of the dedication by the public."[1] On December 19, 2023, in *Morris II*, the Supreme Court of Georgia reversed our opinion in part and remanded the case with direction.[2] Specifically, the Supreme

---

[1] *Morris v. Sumter County*, 365 Ga. App. 323, 329 (1) (878 SE2d 81)(2022) ("*Morris I*").

[2] *Sumter County v. Morris*, 318 Ga. 1 (896 SE2d 571) (2023) ("*Morris II*").

Court clarified that "public acceptance of a road will *not* obligate a county to repair and maintain the road in the absence of express or implied acceptance from the county authorities[.]"[3] And because the Supreme Court could not determine whether we had reviewed the trial court's finding that the County did not impliedly accept the dedication of the roads, the Court remanded the case back to us to review the trial court's finding that the County did not impliedly accept the roads.[4] We now reverse the trial court's decision.

"A trial court's findings of fact after a declaratory judgment hearing are analogous to a jury verdict and will not be interfered with if there is any evidence to support them. However, we review the trial court's conclusions of law de novo."[5]

As described in *Morris I*, so viewed,

the record shows that the roads at issue, Statham Lakefront Road, East Entrekin Road, West Entrekin Road, and Selma Lane, are all located in

---

[3] Id. at 12 (3) (b).

[4] Id. at 14 (4).

[5] (Citation and punctuation omitted.) *Strange v. Towns*, 330 Ga. App. 876 (769 SE2d 604) (2015).

the Statham Lakefront Properties subdivision, although a portion of Statham Lakefront Road extends beyond the entrance of the subdivision to Lamar Road. Statham Lakefront Road is the only road into and out of the subdivision, and the roads are used to access other roads in the subdivision. Statham Lakefront Road, East Entrekin Road, West Entrekin Road, and Selma Lane have been open to the public since at least 2003, and access to the roads has never been restricted.

In 1981, plats were recorded showing the subdivision and all of the roads from Lamar Road to Lake Blackshear. Until recently, the roads were listed as county roads by the regional Geographic Information System, which maintains maps based on input from government agencies.

In 1983, the Sumter County Board of Commissioners adopted standard specifications for County roads. According to the minutes from a 1996 Board of Commissioners meeting, the county attorney reported that the developer had approached him concerning the roads in the subdivision. The roads did not meet the County's specifications, and the Board discussed the possibility of requesting a bond for road maintenance but ultimately took no action.

In 2007, a resident addressed the Board of Commissioners on behalf of the Statham Lakefront Properties Homeowners Association and asked the County to assist with maintenance of the roads in the subdivision, which the residents were willing to deed to the County. Once again, the Board took no action.

According to a former County Commissioner, until 2008, all of the roads in the subdivision were considered private, but that year the Board of Commissioners accepted Statham Lakefront Road as a "trial road" in order to begin improvement projects on it. On April 19, 2010, Lake Blackshear Holdings, LLC, deeded Statham Lakefront Road to the Statham Lakefront Properties Homeowners Association. The same day, the homeowners association entered into a road maintenance easement with the County regarding Statham Lakefront Road, which was recorded in superior court. The easement provides in part:

> The purpose of this easement is [to] allow Sumter County, by and through its Board of Commissioners and its designees, to access the roadway contained in said easement for the sole purpose of road, shoulder and ditch maintenance for public safety purposes, including, but not limited to school bus ingress and egress and emergency vehicles. This easement in no way requires or mandates that Sumter County conduct any maintenance on said roadway, its shoulders and ditches whatsoever, and any such repairs and maintenance shall be done at the sole discretion of Sumter County, and only when such is deemed to be in the best interest of the citizens of Sumter County. Further, Sumter County may cancel and surrender this easement to the lawful owners at any time without notice, if in the discretion of Sumter County, this easement for road maintenance is

4

deemed to not be in the best interest of the citizens of Sumter County, Georgia.

Around this time, the County put up green road signs, which identified the roads as county roads, as well as traffic control signs, and began cutting the grass along the roads. Local residents also put up traffic signs and patched potholes, although it is not clear from the record when this work occurred.

It is undisputed that between 2010 and 2019, the County maintained not just Statham Lakefront Road, but all of the roads at issue. Specifically, as part of the County's 2015 paving project, the County resurfaced the portion of Statham Lakefront Road from Lamar Road to the beginning of the subdivision. A Transportation Special Purpose Local Option Sales Tax (TSPLOST) and a Local Maintenance Improvement Grant (LMIG) funded the 2015 paving project.

As part of the County's 2017 paving project, the County resurfaced the portion of Statham Lakefront Road within the subdivision, as well as East Entrekin Road and Selma Lane, and performed additional maintenance on Statham Lakefront Road. A TSPLOST, Special Purpose Local Option Sales Tax (SPLOST), and LMIG funded the 2017 paving project, but only TSPLOST/SPLOST funds were used to maintain the roads in question.

In 2019, the County stopped maintaining the roads within the subdivision. At the June 2021 hearing before the trial court, the Director

of Public Works for the County testified that the roads required repair, and, without repair and maintenance, the roads were unable to carry ordinary loads. He estimated that it would cost between $1.2 million and $1.6 million to bring the roads into compliance with the County's specifications.

In November 2020, approximately 30 residents and property owners filed a petition for writ of mandamus and declaratory judgment against the County, its Board of Commissioners, and the Board members, seeking to have Statham Lakefront Road, East Entrekin Road, West Entrekin Road, and Selma Lane declared "public roads" and to compel the County to make repairs and maintain the roads. Following briefing and an evidentiary hearing, the trial court ruled that the Board did not expressly accept any offer to dedicate the roads and that the County's maintenance of the roads and use of tax funds to maintain the roads did not constitute an implied acceptance of any offer to dedicate the roads.[6]

As directed by the Supreme Court, we must now expressly decide whether the trial court correctly determined that the County did not impliedly accept the dedication of the roads.[7]

---

[6] (Footnotes omitted.) *Morris I*, 365 Ga. App. at 323-326.

[7] See *Morris II*, 318 Ga. at 14 (4).

Implied "[a]cceptance of a dedication may be shown by any act of [the] governmental entity treating a structure as its own."[8]

> [A]cceptance of property set aside by the owner to a public use will be implied where it is improved and maintained for such use by authorized public officials out of tax funds. . . . A frequent way of showing such implied acceptance . . . in the case of a road or street is to prove that the proper authorities assumed control over such road or street, as by having it worked, graded or paved.[9]

Importantly, "[w]hile working or maintaining the property by the legally constituted authority is the usual method of manifesting acceptance by the governmental entity, it is the government's exercise of dominion and control of the subject of the express offer of dedication which indicates acceptance of the dedication."[10]

---

[8] (Citation and punctuation omitted.) *Kaplan v. City of Sandy Springs*, 286 Ga. 559, 561 (3) (690 SE2d 395) (2010), disapproved in part on other grounds by *Morris II*, 318 Ga. at 10 (3) (a).

[9] (Citations and punctuation omitted.) *Lowry v. Rosenfeld*, 213 Ga. 60, 63-64 (2) (96 SE2d 581) (1957).

[10] *Teague v. City of Canton*, 267 Ga. 679, 681 (3) (482 SE2d 237) (1997) (holding that the City impliedly accepted an offer of dedication of a sewer system because it offered sewer tap-on permits to homeowners, processed the sewage that flowed through the disputed lines, and charged the homeowners for the service).

In the order on appeal, the trial court recognized the foregoing principles. The trial court also stated, however: "[f]urthermore, to act as an implied acceptance of an offer of dedication, a governmental entity's exercise of dominion over a parcel of property much be exclusive." This is not an accurate statement of law, as we discern from Georgia precedent no blanket requirement that a governmental authority's exercise of dominion and control over the roadway must be exclusive to constitute an implied acceptance. The case relied upon by the trial court in support of this principle, *Lines v. State*,[11] concerned an implied offer of *dedication* by a property owner, not an implied *acceptance* by a municipal entity, and is therefore inapplicable to the instant case. Here, given the express offer of dedication by virtue of the recorded plats, the controlling question is whether the County "treat[ed the roadway] as its own."[12]

In support of their argument that the County impliedly accepted the dedication, the residents emphasize that the County used tax dollars to maintain the roads for over ten years and that the County obtained perpetual easements in connection with maintenance projects for the roads. Additionally, the residents note that a Geographic Information System ("GIS") map, which was created using information obtained from

---

[11] 245 Ga. 390 (264 SE2d 891) (1980).

[12] (Citation and punctuation omitted.) *Kaplan*, 286 Ga. at 561 (3).

county officials, depicted the roads as county roads. The trial court concluded that these facts failed to establish implied acceptance by the County, but, as discussed below, we disagree.

*Use of Tax Dollars to Maintain the Roads*

It is undisputed that the County maintained the roads, using public funds, from 2010 to 2019. In this vein, the record reveals that in 2015 and in 2017, the County included work on these roads in its LMIG/TSPLOST projects. As part of the 2015 project, the County used tax dollars to resurface Statham Lakefront Road. As part of the 2017 project, the County used tax dollars to repave and repair Statham Lakefront Road, East Entrekin Road, and Selma Lane.

The trial court found that the County's use of tax dollars to maintain the roads was not evidence of implied acceptance because the County used TSPLOST funds, which can be used on anything related to transportation, rather than LMIG funds, which can only be used on county roads, to pay for the work on the roads at issue here. The residents showed, however, that in the County's advertisements for bids for both the 2015 and 2017 projects, the County described the roads to be worked on as "various county roads in Sumter County." Additionally, although the County paid for the work on the roads at issue with TSPLOST funds rather than with LMIG funds, it is not clear

9

that the County did so because it believed these roads were not county roads. Notably, in the 2015 contract, the County used LMIG funds to pay for all the road widening work (none of which was done on any of the roads at issue in this case) and TSPLOST funds to pay for all the road striping work (which included repairs on Statham Lakefront Road, as well as other roads).

Moreover, although the parties focus on the 2015 and 2017 resurfacing projects, that was not the only work the County performed on the roads. The County also "put up green road signs, which identified the roads as county roads, as well as traffic control signs, and began cutting the grass along the roads[,]"[13] and the record does not indicate what funds were used to pay for those expenses.

*Easement Agreement*

In 2010 and again in 2015, the HOA granted the County an easement across Statham Lakefront Road and four adjoining lots of land; by its terms, the purpose of the easement was to allow the County to access the road to perform maintenance on it. Specifically, the agreement granted the County

> an easement over the following described property for ingress and egress
> purposes as set forth herein below, to wit: [a] perpetual access easement

---

[13] *Morris I*, 365 Ga. App. at 325.

for ingress and egress over, on, and across ALL that tract or parcel of land lying and being in Land Lots 268, 273, 307 and 309 in the Fifteenth Land District of Sumter County, Georgia, and being all of that certain sixty (60') wide strip of land more particularly shown, described and designated as Statham Lakefront Road on the Plat of Survey for Statham Lakefront Properties[.]

Notably, the easement concerned only the portion of Statham Lakefront Road that was located outside the subdivision — it did not mention the roads inside the subdivision, on which the County also performed work.

The trial court concluded that the easement agreement was fatal to the residents' position because it established that the County's work on the road was performed with the HOA's permission rather than as an exercise of the County's exclusive dominion and control. As we concluded above, however, the County did not necessarily need to exercise exclusive dominion and control over the road to impliedly accept the offer of dedication. It seems equally true that the County's exercise of dominion and control need not be adverse, because the question of whether a County impliedly accepted an offer of dedication road would only arise after a landowner has made an offer to dedicate a road. Again, the controlling question is whether the County "treat[ed the

11

roadway] as its own."[14] Here, although the easement granted the County *permission* to cross lots abutting the road in order to access the road and perform work on it, neither the easement nor any other agreement *required* the County to do any particular work on the road. Instead, the agreement expressly provided that any roadwork "shall be done at the sole discretion of Sumter County, and only when such is deemed to be in the best interest of the citizens of Sumter County." Thus, when the County subsequently performed work on the road, it clearly did so at its own discretion.

We recognize that before the County Board of Commissioners accepted the easement, in 2010, the commissioner who signed the easement explained to the other commissioners that the difference between this road and another road was "the fact that the subdivision owned this road."[15] But the HOA's responsibility for maintaining the road in 2010 is not dispositive of the issue in this appeal — which is whether the acts taken by the County after that point, between 2010 and 2019, were sufficient to constitute an implied acceptance of the offer of dedication.

---

[14] (Citation and punctuation omitted.) *Kaplan*, 286 Ga. at 561 (3).

[15] The 2015 easement, though signed by the HOA and recorded the County deed book, apparently was not specifically adopted by the County Board of Commissioners.

Finally, the easement concerned only a portion of Statham Lakefront Road that was outside the subdivision. Thus, even if the existence of the easement may suggest that the County did not view that portion of Statham Lakefront Road as its own, it clearly cannot be treated as evidence as to how the County viewed the roads inside the subdivision.

*GIS Map*

As to the GIS map, the GIS Director testified that in 2003, she coded the roads as county roads pursuant to her conversation with the County Administrator, Code Enforcement Officer, and Public Works Director. The GIS map showed the roads as county roads until 18 years later when, after this litigation began, the County Board of Commissioners instructed the GIS Director to remove the roads from the county road system list. The County insists that the GIS map should not be considered an official record, but the County does not dispute the GIS Director's testimony that the map was created by data provided by the County, designed to be relied upon by government officials, and depicted the roads as county roads for 18 years. While it may be true that the individuals who contributed to the coding of the roads as county roads — the GIS Director, County Administrator, Code Enforcement Officer, and Public Works

13

Director — were not authorized to accept the dedication of the roads,[16] it is also true that public officials are presumed to have performed their duties in the proper manner.[17] Thus, although the GIS map is not conclusive evidence that the County accepted the roads, it nevertheless constitutes evidence that various County officials believed the roads were county roads.

### Offer of Dedication

The County contends there was no offer to dedicate Statham Lakefront Road because the HOA never made an express offer to dedicate the road after 2010, when Lake Blackshear Holdings, LLC deeded Statham Lakefront Road to the HOA. We

---

[16] See OCGA § 36-5-20 (county's governing authority is its Board of Commissioners); OCGA § 36-5-22.1 (a) (3) ("The governing authority of each county has original and exclusive jurisdiction over [t]he establishing, altering, or abolishing of all roads, bridges, and ferries in conformity to law[.]"); *McDilda v. Bd. of Comm'rs*, 230 Ga. App. 530, 533 (1) (b) (497 SE2d 25) (1998) (recognizing that the county's governing authority is its board of commissioners and concluding that the commission chairman, acting alone, was therefore not authorized to close a road).

[17] See *Richmond County Hosp. Auth. v. Richmond County*, 255 Ga. 183, 192 (2) (c) (336 SE2d 562) (1985) (recognizing "the well settled principle that public officials shall be presumed to have performed their duties and acted in good faith unless clearly proven otherwise[]"); *Massey Stores v. Reeves*, 111 Ga. App. 227, 229 (141 SE2d 227) (1965) ("It is a well settled principle of law that all public officers are presumed to have performed their official duties at the proper time and in the proper manner.") (Citations omitted.).

acknowledged, and rejected, this argument in *Morris I*.[18] As the Supreme Court has stated, when an owner subdivides a tract of land and records a plat showing lots with designated streets, it is presumed that the owner has expressly dedicated the streets to the public.[19] In this case, plats showing the roads were recorded in 1981. And in 2010, when the property was transferred to the HOA, the deed expressly provided that the property would revert back to Lake Blackshear Holdings if the HOA failed to convey a right-of-way easement to the County or if the County passed a resolution accepting a right-of-way deed on the property and the HOA refused to turn it over. Under these circumstances, the offer of dedication survived the transfer of ownership from Lake Blackshear Holdings to the HOA.[20]

Ultimately, the undisputed facts of this case show that the County maintained the roads at issue from 2010 to 2019, using public funds, and that the roads were designated as county roads on GIS maps for 18 years, which maps were created using

---

[18] *Morris I*, 365 Ga. App. at 327 (1).

[19] See *Cobb County v. Crew*, 267 Ga. 525, 527 (1) (481 SE2d 806) (1997).

[20] See *Young v. Sweetbriar, Inc.*, 222 Ga. 262, 266 (1) (149 SE2d 474) (1966) (noting that when a grantor delineates streets in a recorded plat, both that grantor and "[a]ll persons claiming under such grantor are forever estopped to deny [the streets'] existence[]") (citations and punctuation omitted).

15

data provided by the County and were intended to be relied upon by government officials. These facts, as well as the other evidence in this case, demonstrate that the County treated the roads as its own such that the County will be deemed to have impliedly accepted the dedication of the roads.[21] The trial court, therefore, erred by entering its declaratory judgment and by refusing to issue the mandamus.[22]

*Judgment reversed. Doyle, P. J., and Padgett, J., concur*

---

[21] See *Kaplan*, 286 Ga. at 561 (3); *Teague*, 267 Ga. at 681 (3); *Lowry*, 213 Ga. at 63-64 (2).

[22] See *Ross v. Hall County Board of Commissioners*, 235 Ga. 309, 312-313 (219 SE2d 380) (1975) (reversing trial court's denial of mandamus relief where the evidence established both dedication of the roads and implied acceptance by county commissioners).